788 F.2d 311
 14 Collier Bankr.Cas.2d 1292, Bankr. L. Rep. P 71,131
In re COUNTY MANAGEMENT, INC., Debtor.
COUNTY MANAGEMENT, INC. and Pampell Interests, Inc.,
Plaintiffs-Appellees,
v.
Charles William KRIEGEL, Receiver, et al., Defendants-Appellants.
 No. 85-2513.
 United States Court of Appeals,
Fifth Circuit.
 April 30, 1986.
 
 Richel Rivers, Hilgers & Watkins, Austin, Tex., for defendants-appellants.
 Thomas Kirkendall, Maddox, Perrin & Kirkendall, David Kirkendall, Houston, Tex., for plaintiffs-appellees.
 Appeal from the United States District Court for the Southern District of Texas.
 Before THORNBERRY, POLITZ and RANDALL, Circuit Judges.
 RANDALL, Circuit Judge:
 
 
 1
 This is an appeal from an order of the district court reversing an order of the bankruptcy court, which had granted summary judgment for defendants. The district court remanded the case to the bankruptcy court for an accounting and other proceedings. Because this court has no jurisdiction to hear an appeal from such an order, we dismiss the appeal.
 
 I.
 
 2
 This is a relatively straight-forward matter, which through procedural maneuvering has grown into a tangled skein. For the purposes of this appeal, the facts are as follows. Debtor County Management, Inc. ("CMI") and Lucille White jointly owned mineral interests in a 113-acre tract of land in Lee County, Texas, together with an individual named Sylvin Mersiovsky. A dispute over development of the land arose, and in 1978 Mersiovsky filed a complaint in state court seeking partition of the tract, which implicated matters of heirship necessary to determine the various interests in the property. In 1979, White sold her interest to Pampell Interests, Inc. ("Pampell"). A second suit was brought in state court, this one by a potential mineral lessee, which sought appointment of a receiver to execute a mineral lease over the entire parcel. The state court in 1982, over the objection of CMI and Pampell and before resolution of the partition action, appointed a receiver to execute a mineral lease over the parcel, which was subsequently effected. One well eventually was drilled on the property, which has produced commercial amounts of oil or gas.
 
 
 3
 Shortly thereafter, in May 1982, an involuntary petition for liquidation under Chapter 7 of the Bankruptcy Code was filed against CMI by two creditors. In August 1982, CMI converted the bankruptcy case to a Chapter 11 reorganization proceeding. The partition proceeding, still pending in the state court, was removed to the Bankruptcy Court. CMI and Pampell (referred to collectively as "plaintiffs") then filed in the bankruptcy proceeding a complaint against the receiver, Mersiovsky, the lessee of the mineral rights, the past and current operators of the oil well, and various other individuals and entities whose role in this morass is not clear[1] (collectively referred to as "defendants"). The complaint alleges that plaintiffs "have not received any payments on production from the well," and seeks (1) an order that the receiver "turnover all property of the debtor found in his possession"; (2) a declaration that the lease executed by the receiver was null and void as to plaintiffs' interests under Texas state law; and (3) an accounting from the receiver of all funds from production of the tract. The complaint contends that the state district court did not confirm the lease entered into by the receiver, which plaintiffs contend is a requirement of Texas law. CMI argues that, in the absence of a confirmation order, its interest in the property became property of the estate under 11 U.S.C. Secs. 541, 544, and should have been turned over by the receiver upon the initiation of the bankruptcy proceeding, Sec. 543. If the lease is invalid, and the property is in effect unleased, plaintiffs believe that they would be entitled to more than if the lease is valid. Regardless of whether the lease is valid or invalid, it seems likely that something must be turned over to the estate, at least if plaintiffs' allegations concerning production from the well prove to be accurate. The issue will be who will turn over how much.
 
 
 4
 All parties filed cross-motions for summary judgment on the merits in July 1983. Defendants, not content with the summary judgment motion they had filed, added a "Motion to Dismiss or, Alternatively, Motion to Abstain and Remand [to State Court], or Alternatively, Motion to Transfer" to the file three weeks later. They argued that only the state court had subject matter jurisdiction over the action.
 
 
 5
 The bankruptcy court granted defendants' motion for summary judgment on May 24, 1984, held that the lease executed by the receiver was valid, and dismissed the complaint. The court did not mention defendants' motion to dismiss for lack of subject matter jurisdiction. Plaintiffs appealed the order to the district court.
 
 
 6
 In an order filed on July 12, 1985, the district court disagreed with the bankruptcy court's assessment of the need for a confirmation order under Texas state law. The court concluded that absent confirmation, the conveyance of interests in the lease executed by the receiver was invalid. The court reversed the dismissal of the proceedings and remanded the case to the bankruptcy court "so that it may consider [CMI's] contention that the receiver was required under 11 U.S.C. Sec. 543 to turn over property of estate to the Debtor-in-Possession and render a complete accounting of all payments made and received" under the terms of the lease, and to determine the partition and heirship issue. Like the bankruptcy court, the district court did not expressly address the merits of defendants' argument regarding the federal courts' jurisdiction over the dispute, perhaps because defendants failed to include the question in their statement of issues for review. Defendants appeal from that order.
 
 II.
 
 7
 This case presents a basic issue of appellate jurisdiction which, although not raised by the parties, we must review on our own motion. Liberty Mutual Ins. Co. v. Wetzel, 424 U.S. 737, 740, 96 S.Ct. 1202, 1204, 47 L.Ed.2d 453 (1976). An appeal from the district court to this court may be taken only from a final order of the district court.[2] A final order "must generally be 'one which ends the litigation * * * and leaves nothing for the court to do but execute the judgment.' " In re Kutner, 656 F.2d 1107, 1110 (5th Cir.1981) (quoting Catlin v. United States, 324 U.S. 229, 233, 65 S.Ct. 631, 633, 89 L.Ed. 911 (1945)), cert. denied, 455 U.S. 945, 102 S.Ct. 1443, 71 L.Ed.2d 658 (1982). The order must "conclusively determine substantive rights of parties" in order to be final. In re Delta Services Industries, 782 F.2d 1267, 1270 (5th Cir.1986). The rules differ somewhat in the bankruptcy context, in that a case need not be appealed as a "single judicial unit" at the termination of the proceeding as a whole. See In re Saco Local Development Corp., 711 F.2d 441, 444 (1st Cir.1983); 16 C. Wright, A. Miller, E. Cooper, Federal Practice and Procedure Sec. 3926, at 60-61 (Supp.1985); Levin, Bankruptcy Appeals, 58 N.C.L.Rev. 967, 985 (1980). However, even in a bankruptcy case, there must be a "final determination of the rights of the parties to secure the relief they seek in this suit" for an order to be considered final. In re Emerald Oil Co., 694 F.2d 88, 89 (5th Cir.1982). See also In re Ben Hyman & Co., 577 F.2d 966, 968 (5th Cir.1978) ("final order is one in which nothing remains to be done but the mechanical entry of judgment by the trial court").
 
 
 8
 The district court's order falls far short of "finally resolving" the dispute between these plaintiffs and defendants. Although the court determined the lease was invalid, it remanded the matter to the bankruptcy court for a determination of the propriety of a turn over order and for an accounting of the proceeds from production. That, in turn, will require a determination of heirship issues. In other words, the rights and liabilities of the parties are merely sketched in pencil within a frame; much painting remains to be done. This remand for further factual findings simply is not a final order. In re Stanton, 766 F.2d 1283, 1287-88 (9th Cir.1985).[3] Even if the district court had merely remanded for an accounting, without requiring that the numerous additional factual and legal issues be decided, its order would not have been final. "Case law interpreting finality under 28 U.S.C. Sec. 1291 establishes the general rule that an order determining the rights and liabilities of the parties and remanding for an accounting is interlocutory." In re Goldblatt Bros., Inc., 758 F.2d 1248, 1250 (7th Cir.1985) (citing Wetzel, 424 U.S. at 744, 96 S.Ct. at 1206). See also Craighead v. Wilson, 59 U.S., (18 How.) 199, 201, 15 L.Ed. 332 (1855) (court decree fixing rights of parties and referring case to subordinate court for a judicial purpose, such as an accounting, upon which a further decree will be entered is not final); In re Commercial Contractors, Inc., 771 F.2d 1373, 1374-75 (10th Cir.1985).[4]
 
 
 9
 The salutary purpose of the rule set forth in Sec. 158 is to avoid piecemeal appeals. Delta Services Industries, 782 F.2d at 1269. Accordingly, if we were satisfied that the remand order required the bankruptcy court to fulfill a purely ministerial, rather than judicial, function so that no further appeal would be taken, we might be inclined to treat the district court order as final. See In re Fox, 762 F.2d 54, 55 (7th Cir.1985) (order is final if "all that remains to do on remand is a purely mechanical, computational, or in short 'ministerial' task, whose performance is unlikely to generate a new appeal or to affect the issue that the disappointed party wants to raise on appeal from the order of remand"). However, we are not confident that the function of the bankruptcy court on remand will be "purely ministerial." Clearly it will be required to take further evidence in order to determine who owns what percentage of the tract and how much the revenues and expenses of the well have been. Perhaps it will make choices between competing factual allegations. It will certainly apply Texas oil and gas law to the set of facts it determines, facts which are not part of the record at this point. An appeal from that process is not so remote a possibility that we should review the lower court's interlocutory order.[5] Further, there is no indication that the interest of any party will be irreparably injured by an orderly, rather than piecemeal, review of the issues raised. Under these circumstances, we have no jurisdiction to hear the appeal.
 
 III.
 
 10
 For the foregoing reasons, the appeal is dismissed for want of jurisdiction.
 
 
 11
 DISMISSED.
 
 
 
 [1]
 Plaintiffs' second amended complaint, filed on July 5, 1983, names as parties to this proceeding, among others, Matt Browne, Dime Box Petroleum Corp., The Talbott Family Partnership, B & B Construction, Tommie Mills, K.E. Davis, Consolidated Tool & Supply, Walter Bankston, Drilling Associates, and Dime Box Mersiovsky-Kubena Ltd. Plaintiffs do not explain in the complaint how these parties are purportedly involved in this dispute
 
 
 [2]
 The rule governing appeals to this court in bankruptcy cases is set forth in 28 U.S.C. Sec. 158(d), which became effective on July 10, 1984, before the notice of appeal was filed in this case. Section 158(d) provides:
 The courts of appeals shall have jurisdiction of appeals from all final decisions, judgments, orders, and decrees entered under subsections (a) and (b) of this section.
 Section 158(d) replaced a nearly identical provision in 28 U.S.C. Sec. 1293(a), which in turn was patterned on the general final order rule of Sec. 129(a). Accordingly, cases interpreting Secs. 1291(a) and 1293(a) may be helpful in construing Sec. 158(d). In re Delta Services Industries, 782 F.2d 1267, 1268 n.2 (5th Cir.1986); In re UNR Industries, Inc., 725 F.2d 1111, 1115-16 (7th Cir.1984); 1 Collier on Bankruptcy p 3.03, at 3-120 (rev. 15th ed.1985).
 There are, of course, exceptions to the final order rule, such as the interlocutory appeal procedure set forth in 28 U.S.C. Sec. 1292(b), assuming that it applies to bankruptcy proceedings. However, the applicability of Sec. 1292(b) need not be addressed because defendants did not seek a Sec. 1292(b) certificate from the district court.
 
 
 [3]
 Defendants in their brief to this court have dusted off their argument that the bankruptcy court did not have subject matter jurisdiction of this dispute. Even if we were to infer that the district court actually reviewed the merits of defendant's motion in the bankruptcy court to dismiss for lack of subject matter jurisdiction and determined that it was properly denied--a dubious proposition in light of the wording of their brief to the district court--it is clear that the denial of a motion to dismiss for lack of subject matter jurisdiction is not a final order. Catlin v. United States, 324 U.S. 229, 236, 65 S.Ct. 631, 635, 89 L.Ed. 911 (1945) (motion to dismiss, even on jurisdictional grounds, not immediately reviewable absent exceptional circumstances); Fluor Ocean Services, Inc. v. Hampton, 502 F.2d 1169, 1170 (5th Cir.1974)
 
 
 [4]
 The Third Circuit would apparently hear this appeal: "when the bankruptcy court issues what is indisputably a final order, and the district court issues an order affirming or reversing, the district court's order is also a final order for purposes of [section 158(d) ]." In re Marin Motor Oil, Inc., 689 F.2d 445, 449 (3d Cir.1982), cert. denied, 459 U.S. 1207, 103 S.Ct. 1196, 75 L.Ed.2d 440 (1983). This court declined to follow such a rule in In re Emerald Oil Co., 694 F.2d at 89, and we are, of course, bound by that panel's decision. A convincing opinion rejecting the Third Circuit's rule is set forth in In re Riggsby, 745 F.2d 1153 (7th Cir.1984):
 Because most proceedings before bankruptcy judges are summary, remands usually take little time to complete and it is therefore more efficient to wait till the bankruptcy judge is finished with the case--not necessarily with the bankruptcy, since a single bankruptcy can give rise to numerous claims which are litigable to final judgments appealable while the bankruptcy proceeding is still going on--before bringing up the case to the court of appeals. If a district judge remanded a case for further proceedings that would take a week to complete, and the remand order was appealable and was upheld on appeal, a year or more might elapse before the proceedings on remand were concluded. Yet if those proceedings had been conducted without this interruption, then, depending on their outcome, there might be no appeal at all, and in any event there would be no chance of two appeals--one from the order of remand and the other from whatever order the district judge entered on appeal from the bankruptcy judge's final decision following remand.
 Id. at 1155-56.
 The panel's decision in In re Cross, 666 F.2d 873 (5th Cir.1982), is not contrary to Emerald Oil, as defendants assert. Cross concerned an interlocutory appeal authorized by Sec. 24(a) of the Bankruptcy Act of 1898, 11 U.S.C. Sec. 47(a) (1976) (repealed 1978). Section 24(a) authorized appeals of interlocutory orders in a bankruptcy "proceeding," but not of orders relating to a "controversy" arising within a proceeding in bankruptcy. Cross, 666 F.2d at 877. The court determined that the appealed order fell into the first category. Emerald Oil, on the other hand, involved an appeal under the Bankruptcy Reform Act of 1978, which did not retain the language of Sec. 24(a) of the 1898 Act.
 
 
 [5]
 Defendants attempt to fit the instant case into the Fox exception, claiming that the accounting will be undertaken according to "undisputable principles of oil and gas law" that are "unlikely to generate any legal dispute." Plaintiffs, naturally, make no such representation. Perhaps another panel of this court in time will have the opportunity to review whether defendants' characterization of Texas law as "undisputable" is correct. Let us hope so
 We recognize that if defendants ultimately prevail on the merits, the "laborious" accounting process under the assumption that the lease was invalid would have been unnecessary. However, such is the case with any interlocutory liability decision when damages have yet to be calculated. Further, although we express no opinion on the issue, the bankruptcy court may wish to investigate whether two separate accountings, one assuming that the lease was valid and the other assuming that the lease was invalid, may be effected practicably. Such would permit subsequent reviewing courts to determine finally this matter without subsequent remands, in the event that the parties are unable to resolve this dispute amicably.