In re TEXAS EXTRUSION
CORPORATION,
Appellant.

In re PICKENS INDUSTRIES,
INCORPORATED, Appellant.

In re Richard W. PICKENS, d/b/a
Gold Sun Aluminum, Inc.,
Appellant.

In re Louise PICKENS, Appellant.

TEXAS EXTRUSION CORP., Pickens Industries, Inc., Richard W. Pickens, Individually and d/b/a Gold Sun Aluminum Inc., and Louise Pickens, Appellants,

v.

PALMER, PALMER &
COFFEE, Appellee.

Civ. A. Nos. 3–84–1057–F to
3–84–1060–F and
3–86–1493–F.
Bankruptcy Nos. 82–00387, 82–00386,
83–00008 and 83–01542.

United States District Court,
N.D. Texas,
Dallas Division.

Dec. 30, 1986.

Emil Lippe, Lippe and Associates, Dallas, Tex., for appellants.

Sam P. Burford, James B. Harris, Thompson & Knight, Dallas, Tex., for Lockheed Corp., appellees in Civ. A. Nos. 3–84–1057–F to 3–84–1060–F.

Philip I. Palmer, Jr., Palmer, Palmer, & Coffee, Dallas, Tex., for Palmer, Palmer & Coffee, appellee in Civ. A. No. 3–86–1493–F.

## MEMORANDUM ORDER

ROBERT W. PORTER, District Judge.

### I. FACTS.

This opinion covers five disputes arising from identical facts. Four are bankruptcy appeals; one is an appeal from a set of findings of fact and conclusions of law concerning attorney's fees awarded to appellants' first lawyers.

Richard Pickens, appellant, developed a successful method of extruding aluminum. Mr. Pickens and his wife Louise owned 80% of the stock in Pickens Industries Incorporated, ("PII"), which owned all the stock in Texas Extrusion Corporation ("TEC"). Mr. Pickens' extrusion method was so successful that Lockheed Corporation contracted with his company, TEC, to supply the aluminum that Lockheed would need to build airplanes. Lockheed loaned Mr. Pickens about five million dollars to help him re-tool to meet Lockheed's demands. Mr. and Mrs. Pickens personally guaranteed these loans. Things went well for a while, but later the economy sagged and Lockheed simply did not need as much aluminum as they had contracted for. Even worse for the Pickens and TEC, though Lockheed did not buy as much aluminum as before, the Pickens and TEC remained obligated to repay Lockheed.

These events resulted in basically two lawsuits. TEC sued Lockheed ("the corporate lawsuit") and the Pickens sued Lockheed ("the personal lawsuit"). Both suits alleged breach of contract and fraud.

In both lawsuits, there was an attempt to add plaintiffs. In the personal lawsuit, plaintiffs Richard and Louise Pickens filed a motion for leave to amend the complaint to add PII as a plaintiff. This motion was never granted. Hence, the only party plaintiffs in the personal lawsuit were Richard and Louise Pickens. There was a motion to intervene in the corporate lawsuit, which was also never granted. The would-be Intervenors were Richard and Louise Pickens and PII. Hence, the only party plaintiff in the corporate lawsuit was TEC.

Eventually, because they could not stand the pressure of doing little business and trying to repay Lockheed, both TEC and PII filed for Chapter 11 bankruptcy relief on March 24, 1982. On January 3, 1983, Richard filed for Chapter 11 and his wife did the same on November 21, 1983.

Initially, TEC was a debtor in possession. While debtor in possession, TEC incurred one million dollars in debts. On November 21, 1983, the trustee informed the bankruptcy court that TEC could not operate profitably and that the business should be closed.

The Plan that was eventually confirmed had four basic provisions:

1. Cressona, a competitor of TEC, would buy the principal assets of TEC.

2. Lockheed would waive deficiency claims against all debtors, after Lockheed received the purchase price from Cressona to partially satisfy the security interests in assets of TEC and the Pickens held by Lockheed.

3. Debtors would release all claims and causes of action against Lockheed

and its affiliates, including the corporate and personal lawsuits and Lockheed would release all suits against the debtors.[1]

4. Third party creditors holding first lien debts on the real property of debtors would be paid and Lockheed would pay all allowed post-petition claims and tax claims against all debtors. Lockheed would also partially pay the unsecured creditors of TEC.

Appellants raise many issues, and each will be handled separately, but they boil down to two things. First, are the fact findings of the bankruptcy court clearly erroneous and second, did the court abuse its discretion in procedural handling or approval on the merits of the Joint Plan of Reorganization. There are two findings of fact that are challenged. The first finding of fact concerns the Joint Plan of Reorganization ("Joint Plan")[2] and the second finding of fact concerns attorney's fees that were paid to the first lawyers that appellants had when they were in bankruptcy.

For the reasons stated below, the Court finds that the findings of fact as to the Joint Plan were not clearly erroneous and that the findings of fact as to the attorneys fees were clearly erroneous. The Court further finds that the bankruptcy court did not abuse its discretion in procedural handling of approval on the merits of the Joint Plan.

The following section covers all issues concerning TEC, and most of the issues for the other three debtors. However, since each of the other three debtors has additional issues, those issues will be handled in separate sections. The last section covers the findings of fact concerning attorney's fees.

## II. ISSUES COMMON TO ALL DEBTORS.

### A. JURISDICTION.

The first issue is whether this Court has jurisdiction over the bankruptcy court's approval of the disclosure statement.

■ Though a disclosure statement must be filed before a reorganization plan may be filed,[3] appellants never filed a disclosure statement. Hence, to file a plan, the appellees filed a disclosure statement on December 23, 1983. A first amended disclosure statement was filed January 13, 1984. The bankruptcy court approved the first amended disclosure statement and the appellants appeal this. The Court lacks jurisdiction of an appeal that is not timely filed. *In re Robinson,* 640 F.2d 737, 738 (5th Cir.1981). The issue is whether appellants timely filed their notice of appeal concerning this order approving the disclosure statement so that this Court would have jurisdiction over the question of whether the disclosure statement was properly approved. Bankr.R. 8001(a)[4] and Rule 8002(a)[5] allow ten days to file the notice of appeal from *final* or-

---

1. Lockheed had filed a lawsuit against Richard and Louise Pickens individually to collect the debt of TEC that they had personally guaranteed.

2. All references in this opinion to the Joint Plan are to the Second Amended Joint Plan, i.e. the Plan that was effected, unless otherwise noted.

3. 11 U.S.C. 1125(b) (1979) provides: An acceptance or rejection of a plan may not be solicited after the commencement of the case under this title from a holder of a claim or interest with respect to such claim or interest, unless, at the time of or before such solicitation, there is transmitted to such holder the plan or a summary of the plan, and a written disclosure statement approved, after notice and a hearing, by

the court as containing adequate information. The court may approve a disclosure statement without a valuation of the debtor or an appraisal of the debtor's assets.

4. Bankruptcy Rule 8001(a) provides in part: An appeal from a final judgment, order, or decree of a bankruptcy judge to a district court or bankruptcy appellate panel shall be taken by filing a notice of appeal with the clerk of the bankruptcy court within the time allowed by Rule 8002.

5. Bankr.Rule 8002(a) provides in part: "The notice of appeal shall be filed with the clerk of the bankruptcy court within 10 days of the date of the entry of the judgment, order, or decree appealed from."

ders. The easy question is whether any appellant met the ten day deadline. None of them did. In each case, the order approving the amended disclosure statement was issued on January 25, 1984, and in each case notice of appeal was filed on April 9, 1984.

■ The difficult question is whether an order from a bankruptcy court approving a disclosure statement is a final order that can be appealed under Rules 8001(a) and 8002(a). The Court has decided that such an order is a final order.

The Court's first independent reason for so holding comes from statutory construction. The language in Rule 8002(c)[6] implies that notice of appeal may be filed from orders approving disclosure statements, which suggests that such orders are final.

The second independent reason for considering such orders final comes from an analysis of case law. "Traditionally, every civil action in a federal court has been viewed as a 'single judicial unit,' from which only one appeal would lie." *In re Saco Local Development Corp.*, 711 F.2d 441, 443 (1st Cir.1983). In bankruptcy proceedings, however, courts take a different view of what constitutes a final order for the purposes of appeal. *Aetna Life Ins. Co. v. Leimer (In re Leimer)*, 724 F.2d 744, 745 (8th Cir.1984) (order refusing to release land from automatic stay is appealable). The bankruptcy case is not viewed as a single judicial unit. As noted in *In re Saco Local Development Corp.*:

6. Bankr.Rule 8002(c) provides in part: "A request to extend the time for filing a notice of appeal must be made before the time for filing a notice of appeal has expired, except that a request made no more than 20 days after the expiration of the time for filing a notice of appeal may be granted upon a showing of excusable neglect *if the judgment or order appealed from ... is not a judgment or order approving a disclosure statement,* confirming a plan, dismissing a case, or converting the case to a case under another chapter of the Code." (emphasis added).

7. The Court notes but does not rely upon the three-step analysis to determine whether a bankruptcy order is final given in *In re Olson,* 730 F.2d 1109, 1109 (8th Cir.1984). The factors are:

Although Congress has defined appellate bankruptcy jurisdiction in terms ("final judgment, order, or decree") similar to those appearing in other jurisdictional statutes ... the history of prior federal bankruptcy law and the 1978 act convinces us that Congress did not intend the word "final" here to have same meaning—at least not with respect to the application of the traditional "single judicial unit" rule.... Congress has long provided that orders in bankruptcy cases may be immediately appealed if they finally dispose of *discrete disputes within the larger case.*

... *In re Saco Local Development Corp.*, 711 F.2d at 444.

The Fifth Circuit has adopted the *In re Saco* reasoning. The Court in *In re County Management, Inc.*, 788 F.2d 311 (5th Cir.1986) stated that the general rule is that a final order must "be 'one which ends the litigation * * * and leaves nothing for the court to do but execute the judgment.'" *Id.* at 313. The court stated that "The rules differ somewhat in the bankruptcy context, in that a case need not be appealed as a 'single judicial unit' at the termination of the proceeding as a whole." *Id.* (citing *In re Saco Local Development Corp.*, 711 F.2d 441, 444 (1st Cir.1983)). The Fifth Circuit also recognized that "courts properly view finality more flexibly under [28 U.S.C. 158(d) ] (and its predecessor § 1293(b)) than under § 1291." *In re Delta Services Industries*, 782 F.2d 1267, 1269 (5th Cir.1986) (citing *In re Saco* ).[7]

(1) The extent to which the order leaves the Bankruptcy Court nothing to do but to execute the order;
(2) The extent to which delay in obtaining review would prevent the aggrieved party from obtaining effective relief; and
(3) the extent to which a later reversal on that issue would require recommencement of the entire proceeding.

The first consideration in *Olson* is met because the entry of such an order completely disposes of all issues as to the disclosure statement and leaves nothing further for the Bankruptcy Judge to do on that issue. The second test is also met, since in the instant case the appellant still appeals many other issues and is not precluded from obtaining relief. The third factor is also

The appellants did not timely file their notice of appeal from the bankruptcy court's final order. Therefore, this Court does not have jurisdiction to hear the appeals concerning the disclosure statement. Though appellants did not timely file their notice to appeal the approval of the disclosure statement, they did timely file their notice to appeal the other issues discussed in this opinion.

## B. ALLOWANCE AND DISALLOWANCE OF VOTES.

Appellants next ask whether the bankruptcy court's rulings concerning allowance or disallowance of the votes of the creditors concerning the Plan complied with provisions of 11 U.S.C. § 1126(e) (1979).[8]

■ In Chapter 11 Bankruptcy, the creditors may vote to either accept or reject the plan. *See* 11 U.S.C. 1126(a) (1979). On February 13, 1984, Richard Pickens sent a letter to all creditors seeking rejections of the Plan. The bankruptcy court determined this letter to be a "hustle" letter in violation of § 1125(b).[9]

### 1. *Leavesley Settlement.*

Appellants argue that the Leavesley[10] settlement was entered into just before Leavesley voted to induce his vote in favor of the Plan. The Court finds that even if an agreement was entered into, it did not matter since the Leavesley vote was not counted.[11]

### 2. *SBA Vote Change.*

Appellants next argue that the Small Business Administration, ("SBA") changed

its vote in violation of Bankruptcy Rule 3018(a) which provides that the Court should allow a rejection to be withdrawn and changed "[f]or cause shown and within the time fixed for acceptance or rejection of a plan...." Bankr.R. 3018(a). When the SBA sought to withdraw its rejection, the time for doing so had already passed.

■ The Court refers to *In re Jartran*, 44 B.R. 331 (Bankr.D.Ill.1984). The *Jartran* Court indicated that "There may be exceptional circumstances which, in light of the spirit of Chapter 11 to promote consensual plans, would warrant such a change [of vote from rejection to acceptance] notwithstanding the unequivocal language of the Rule [3018(a)]." *Id.* at 363. In *Jartran*, the Court stated that where leave to amend the ballot is sought pursuant to a contract with fewer than all class members, and constitutes partial consideration, then the proposed amendment is inappropriate. In the instant case, the Court holds that exceptional circumstances do exist, such that to promote a consensual plan the bankruptcy court correctly permitted a late change of ballot. *Id.* Here the plan is consensual and there is no indication that anyone is left out or that it serves as partial consideration. The reason that the SBA had initially rejected the plan was that it was not provided for in the plan. The SBA was not provided for in the plan because debtor Louise Pickens failed to list the SBA as one of her creditors. This is the exceptional circumstance that warrants the change of vote notwithstanding Rule 3018.

---

met, since if this court were to reverse the Bankruptcy Judge's decision to approve the disclosure statement, then much of the work performed in the Bankruptcy Judge's Court would have to be redone including making a new plan.

**8.** 11 U.S.C. 1126(e) (1979) provides: "On request of a party in interest, and after notice and a hearing, the court may designate any entity whose acceptance or rejection of such plan was not in good faith or was not solicited or procured in good faith or in accordance with the provisions of this title."

**9.** See Conference Hearing at 57, where the Bankruptcy Judge pointed out that the appellants had improperly solicited rejections of the plan and ruled that the rejections of the plan so solicited would not be counted (hereinafter cited as Conf.Hear.).

**10.** J.D. Leavesley was an unsecured creditor of TEC. Appellants argue that his claim was worthless and would have been disallowed had there been no settlement.

**11.** Conference hearing at 68.

## C. DISCRETIONARY RULINGS.

Appellants next ask whether the bankruptcy court erred in refusing to grant the debtors' motion for directed verdict at the close of the proponents' evidence in the TEC case, and whether it compounded the error by allowing the proponents to reopen and present evidence essential to their case in chief after the debtor's motion for judgment. Such rulings are discretionary and appellants have failed to show that the bankruptcy court abused its discretion. Hence there is no reversible error. *In re American Beef Packers, Inc.*, 457 F.Supp. 313, 315 (D.Neb.1978).

## D. SUFFICIENCY OF EVIDENCE.

■ Appellants next ask whether there was sufficient competent evidence presented in the proponents' case in chief on the TEC case to support any finding concerning the settlement value of the litigation.

Appellants argue that the only evidence in the appellee's case in chief was the testimony of the Trustee for TEC, Mr. Daniel Stewart. Appellants argue that the evidence given in appellee's rebuttal testimony has no probative value. The appellants assert that their evidence was the only evidence having probative value.

The Court is not persuaded.

Three witnesses testified for appellees about the settlement value of the litigation: the Trustee, his lawyer, and the attorney for the Creditors' Committee. Each witness was thoroughly familiar with the litigation [12] and each witness placed the settlement value of the law suit significantly below the estimates given by the witnesses for the appellants.

Appellants provided two witnesses who had only briefly examined documents concerning the litigation, and had only seen documents favoring the appellants. [13]

The Court therefore finds that the bankruptcy court's finding of value for the TEC suit was supported by sufficient competent evidence.

## E. LIQUIDATION V. REORGANIZATION VALUE UNDER § 1129(a)(7).

Appellants next argue that the plan of reorganization fails to meet the requirements of 11 U.S.C. 1129(a)(7) (1979) [14] because, appellant argues, the corporate lawsuit had a reasonable settlement value of at least twenty million dollars. Appellants' argument rests on the premise that the settlement value of the lawsuit was twenty million dollars. Appellants are alone in this belief. The bankruptcy court did not find this, and the court does not find that the bankruptcy court's findings were clearly erroneous. See *infra.*

## F. WHETHER FINDINGS WERE CLEARLY ERRONEOUS.

Appellants next ask whether the findings of settlement value of the TEC lawsuit against Lockheed were clearly erroneous.

■ Evaluating the settlement value of a lawsuit is difficult business, particularly in the context of bankruptcy. However, bankruptcy courts have detailed the following factors to evaluate lawsuits.

1. The probability of success in the litigation, with due consideration for the uncertainty in fact and law;

2. the complexity and likely duration of the litigation and any attendant expense, inconvenience and delay; and

3. all other factors bearing on the wisdom of the compromise.

(A) each holder of a claim or interest of such class—
(ii) will receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of this title on such date....

---

**12.** *See e.g.* Conf.Hear. at 851–854 for material on the Trustee's counsel.

**13.** *See* Conf.Hear. at 411, 501–503.

**14.** 11 U.S.C. § 1129(a)(7) (1979) provides in part: The court shall confirm a plan only if all of the following requirements are met:
(7) With respect to each impaired class of claims or interests—

**720**

*In re Jackson Brewing Co.,* 624 F.2d 599, 602 (5th Cir.1980).[15] The "other factors" would include difficulty, if any, to be encountered in the matter of collection and the paramount interest of the creditors and a proper deference to their reasonable views in the assets. *Id.,* (citing *Drexel v. Loomis,* 35 F.2d 800, 806 (8th Cir.1929)). In applying these factors, the Court finds the following.

**1. *Probability of Success.***

■ The probability of success in litigation encompasses two factors—damages and liability. In this case, the bankruptcy court was presented with a divergence of views both as to the amount of damages recoverable and the possibility of recovering those damages in the corporate lawsuit.

**2. *Complexity of Litigation.***

There was evidence that the lawsuits against Lockheed would be expensive and time consuming since they could involve significant discovery around the country, and could take several years to conclude. Moreover, Debtors never explained how such protracted and costly litigation would be financed.

**3. *Interest of Creditors.***

In this case, the creditors indicated through voting what they believed to be in their best interest—settlement of the lawsuits. At the Confirmation Hearing, the only parties opposing the Joint Plan were the Debtors.

**4. *Difficulties in Collection***

Collection of any judgment by appellants against Lockheed could be subject to an offset of $7,000,000 because of the liens Lockheed had on TEC assets, PII stock, and certain personal assets of the Pickens.

The Court therefore finds that the findings by the bankruptcy court of the settlement value of the corporate lawsuit against

Lockheed were not clearly erroneous. The Court so finds, because after an extensive review of record, the court does not have the conviction that a mistake has been committed. *Golf City, Inc. v. Wilson Sporting Goods Co., Inc.,* 555 F.2d 426, 434 (5th Cir.1977). The findings on settlement value are not illogical or implausible. *Geyen v. Marsh,* 775 F.2d 1303, 1310 (5th Cir. 1985).

**G. IMPROPER RELIANCE ON THE ADVICE OF THE TRUSTEE.**

Appellant next asks whether the bankruptcy court, in making its findings on the value of the corporate lawsuit, improperly relied upon the advice and conclusions of the trustee of TEC, rather than making an independent determination based upon the evidence at the hearing.

Appellant argues that the bankruptcy court relied too heavily on the bald conclusion of the Trustee in this case, and that such reliance would support reversing the bankruptcy court on its findings on the value of the settlement value of the corporate lawsuit. *TMT Trailer Ferry v. Anderson* 390 U.S. 414, 433, 88 S.Ct. 1157, 1167, 20 L.Ed.2d 1 (1968). However, there is Fifth Circuit authority that the Court is permitted to rely somewhat upon the judgment of experienced counsel for the parties. *Cotton v. Hinton,* 559 F.2d 1326, 1330 (5th Cir.1977). Further, the *TMT* Court also noted that "[i]f the quoted statement of the trial court had been the result of an adequate and intelligent consideration of the merits of the claims, the difficulties of pursuing them, the potential harm to the debtor's estate caused by delay, and the fairness of the terms of settlement, then it would without question have been justifiable to approve the proposed compromises." *TMT* 390 U.S. at 434, 88 S.Ct. at 1168.

■ The bankruptcy court met this standard. The bankruptcy court heard not only

---

**15.** Although these criteria were developed in conjunction with Rule 9019 of the Bankruptcy Code, which allows a trustee to compromise and settle claims, they are equally applicable to this case, insofar as they serve as a guide for the Court in evaluating the propriety of the settlement value reached.

from the Trustee, but also from other witnesses from both sides. After carefully reviewing the transcript of the proceedings, this Court finds that the bankruptcy court met the *TMT* standard of making its own independent and intelligent determination of the facts and merits of the claim.[16]

## H. SHIFTING OF BURDEN OF PROOF.

Appellants next ask whether the bankruptcy court misplaced the burden of proof concerning value of the lawsuits. The parties agree that the proponent of the plan of reorganization has the burden of proof. This Court has determined that the bankruptcy court did not improperly shift the burden of proof. Appellants failed to persuade the Court with case law or the record.[17]

## I. BANKRUPTCY COURT REFUSAL TO ACCEPT INTERVENTION.

Appellants next ask whether the bankruptcy court erred in refusing to permit intervention by PII into the corporate suit. This Court finds that the bankruptcy court correctly denied intervention. Intervention would have been improper for two reasons. First, it was not timely filed and second, there was already adequate representation.

■■■ Whether leave to intervene is sought under section (a) or section (b) of Rule 24, the application must be timely. *Stallworth v. Monsanto Co.*, 558 F.2d 257, 263 (5th Cir.1977). In this case the appellant sought to intervene in the corporate lawsuit on February 15, 1984, one week prior to the confirmation hearing on the joint plan. Appellees understandably argue that the PII's actions were a deliberate attempt to scuttle the joint plan of reorganization.

■■■ The *Monsanto* Court lists four factors to consider when determining whether a petition for leave to intervene is timely. The first factor is the length of

time during which the would-be Intervenor actually knew or reasonably should have known of his interest in the case before he petitioned for leave to intervene. *Id.* at 264. In this case counsel for PII was also counsel for TEC. Hence, counsel was well aware of PII's interest in the case long before he petitioned for leave to intervene. In *Monsanto,* the Intervenors had filed a petition to intervene "just under one month after the entry of the March 7 order and three weeks after they were first affected by the decree." *Id.* at 262. The *Monsanto* Court notes that the intervenors had no excuse for their long delay. *Id.*

Here, appellants admit that they sought leave to intervene three months after they lost control of the corporate suit due to the appointment of the trustee. They seek to excuse their delay by claiming that though they had lost control of the suit, they were unaware until January 1985 of the Trustee's unwillingness to pursue litigation.[18] Appellants were unaware of this because they did not bother to investigate. This is hardly a reason to permit intervention. They also admit that about a month passed from the time that the Trustee directed appellant's counsel to proceed no further in their action on the law suit to the time that they filed their motion to intervene. Further, though they seek to excuse their three month delay after losing control of the case, appellants do not even try to defend their failure to move to intervene before they lost control of the case. Hence, the factual parallel is not just very close, the argument against intervention is made *a fortiori* here.

The second factor is the extent of the prejudice that the existing parties to the litigation may suffer as a result of the Intervenor's failure to apply for intervention as soon as he actually knew or reasonably should have known of his interest in the case. *Id.* at 265. This factor should

---

**16.** *See* Conf.Hear. at 1121–1149.

**17.** *See* Conf.Hear. at 322–323, for language showing that the Bankruptcy Court did not improperly place the burden of proof.

**18.** Appellants' Reply Brief to Brief of Appellee Lockheed Corp. at 39.

not be considered under Rule 24(a) intervention. *Id.* The third factor is the extent of the prejudice that the would-be Intervenor may suffer if his petition for leave to intervene is denied. *Id.* This Court finds that the would-be Intervenor would suffer little or no prejudice because there was already adequate representation. The lawyers for Plaintiff and proposed Intervenor were the same. The fourth factor is the existence of unusual circumstances militating either for or against determination that the application is timely. *Id.* at 266. In this case there are no unusual circumstances other than that the would-be Intervenor delayed for such a long time before petitioning for leave to intervene. This militates against permitting intervention.

Fed.R.Civ.P. 24(a) [19] requires that before intervention can be granted, the moving party must show that his interests are not being adequately represented by existing parties. As stated *supra,* the Intervenors already had adequate representation.

For the reasons given above, intervention was properly denied.

## J. SUBSTANTIVE CONSOLIDATION.

[12] Appellants next ask whether the joint plan of reorganization in effect substantively consolidated all four bankruptcy cases without pleading, proof, or adequate findings under law to support substantive consolidation. Such consolidation is prohibited. *United States v. Alaska Nat'l Bank of the North,* 669 F.2d 1325, 1330 (9th Cir.1982). Appellees do not dispute that this is the law. They only argue that such consolidation did not occur here.

### 1. *Six Inch Press.*

■ One rubbing point is a six-inch press owned by Richard Pickens. Appel-

lant states that "No amount of [the] purchase price for machinery and equipment was allocated to the six-inch press and no part of the purchase price was placed into the Richard Pickens estate for the benefit of its creditors, despite the uncontradicted evidence that the six-inch press was worth between $75,000 and $175,000...." [20] The consideration for the six-inch press went, not to the creditors of TEC, but to Lockheed as a secured creditor of Richard Pickens because Lockheed had a security interest in the six-inch press.[21] Therefore, there was no consolidation.

### 2. *Lockheed's Payment of Administrative Fees.*

Appellant next argues that the paying of the administrative fees for all four cases in one lump sum, was a payment of TEC assets for debts of the other estates.

This argument fails simply because the money that was paid was not, by definition[22] an asset of TEC. The money was then an asset of Lockheed.

### 3. *Louise Pickens' Tax Debts.*

Appellant next claims that funds from Richard Pickens' estate were improperly used to pay debts of Louise Pickens' estate.

■ It is true that funds from the Richard Pickens estate were used to pay a separate debt of Louise Pickens. However, this was proper. The Richard Pickens estate consisted of the separate and community property of Richard Pickens and the community interest of Louise Pickens. Therefore, monies received by the Richard Pickens estate could be used to pay the separate debts of Louise Pickens under Texas law. Tex.Fam.Code Ann. § 5.61(c) (Vernon 1975).

---

**19.** Fed.R.Civ.P. 24(a) provides: Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute of the United States confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to

protect that interest, unless the applicant's interest is adequately represented by existing parties.

**20.** Appellants' Brief on Common Issues at 85.

**21.** Joint Plan at ¶ 4.4.

**22.** See Joint Plan at ¶ 4.4.

## K. GOOD FAITH UNDER 11 U.S.C. 1129(a)(3).

■ Appellant next argues that the confirmation plan fails to meet the requirements of § 1129(a)(3) [23] because it was proposed in bad faith and in violation of law. The test for good faith is whether there is a reasonable likelihood that the plan will achieve a result consistent with standards under § 1129. *In re Toy and Sports Warehouse, Inc.*, 37 B.R. 141, 149 (Bankr. N.Y.1984). The test for good faith is not based on what the plan proponents' behavior prior to petition was. It is only based on the Plan itself and its acceptance. *In re Cyr Bros. Meat Packing, Inc.*, 2 B.R. 620, 626 n. 24 (Bankr.D.Maine 1980).

Appellants' arguments fail to show that there is not a reasonable likelihood that the Plan will achieve a result consistent with the standards under section 1129.

■ Further, it is clear from the language of § 1129(a)(3) that it must be shown that the *plan* is not by any means forbidden by law. Appellants assert that they had presented a prima facie case that the plan was proposed in violation of the antitrust laws. However, all the evidence that they cite has nothing to do with the plan. All the evidence that appellants cite concerns acts allegedly committed prior to the filing for bankruptcy and is hence not relevant to the plan.

This reasoning is supported by *In re Cyr Bros. Meat Packing, Inc.*, 2 B.R. 620, 626 n. 24 (Bankr.D.Maine 1980). The court there focused on the plan only and not on prior events.

Even if this Court did not accept the *Cyr Bros.* reasoning, the Court would not be moved by the appellants' arguments as to antitrust violations. Their "proof" of viola-

tions of law rests largely on an amended complaint from the corporate lawsuit. The amended complaint, though admitted into evidence, was not filed with the other pleadings, because it was attached to a motion to intervene that was properly denied. See *supra*.

Though appellants have spilled much ink informing the Court as to what the elements of a cause of action are for antitrust violations, they spend no time showing that the prima facie case has been proved. They merely make the conclusory statement that "appellants produced evidence on every single elements of all three claims." [24]

## L. REFERENCE TO SECTION 363 IN ORDER CONFIRMING PLAN.

Appellants next ask whether the bankruptcy court erred in providing in the order confirming the plan of reorganization that the sale of the debtors' property was pursuant to 11 U.S.C. § 363 (1979), and whether such language should be ordered void *ab initio*. Appellants allege that Lockheed wanted this statutory reference to prevent Debtors from unwinding its scheme in the event of reversal.[25] Appellant refers to two cases, *Pension Benefit Guaranty Corp. v. Braniff Airways, Inc.*, 700 F.2d 935 (5th Cir.1983) and *In re White Motor Credit Corp.*, 14 B.R. 584 (Bankr.N.D. Ohio, 1981) to argue that the bankruptcy court improperly referred to section 363.

The only thing that these two cases say about section 363 is that it cannot be used to short circuit the requirements in Chapter 11. *See Braniff Airways* 700 F.2d at 940; *In re White*, 14 B.R. at 590. Appellees did not attempt to short circuit the requirements of Chapter 11, rather they met those

---

**23.** 11 U.S.C. 1129(a)(3) (1979) provides: The court shall confirm a plan only if all of the following requirements are met:

(3) The plan has been proposed in good faith and not by any means forbidden by law.

**24.** Appellants' Brief on Common Issues at 79.

**25.** 11 U.S.C. 363(m) (1979) provides:

The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

requirements. Therefore, appellants' argument does not persuade the Court.

## M. FINDINGS OF FACT.

Appellant next asks whether the written findings of fact and conclusions of law should be stricken in their entirety because they were prepared by counsel for Lockheed Corporation, were never served upon counsel for debtors prior to their signature by the Court, and were amended and modified over an extended period of time as a result of ex-parte communications allegedly in violation of Bankruptcy Rule 9003, Canon 7, EC 7–35, Disciplinary Rule 7–110(B) of the Code of Professional Responsibility and Canon 3 A(4) of the Code of Judicial Conduct.

Though appellants ask whether the findings and conclusions should be stricken, their brief argues only for an overturning of the plan.[26] Further, appellants do not specifically object to any portion of the written findings of fact and conclusions of law. Appellants only offer the conclusory argument that "it is obvious that the written findings of fact were drafted and negotiated by Lockheed without regard to the truth, and certainly without being admitted to competent evidence admitted at the hearing...."[27]

Bankruptcy Rule 8013 provides in part: "Findings of Fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses." Bankr.R. 8013. The "clearly erroneous" standard was explicated by the Fifth Circuit where it stated that a finding is "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. *Golf City, Inc. v. Wilson Sporting Goods Co., Inc.*, 555 F.2d 426, 434 (5th Cir.1977).

After extensively reviewing the written findings of fact and conclusions of law and the court's oral findings of fact and conclusions of law, this Court is not left with such a conviction. The findings of fact and conclusions of law are not clearly erroneous. *Professional Golfers Assoc. v. Bankers Life & Casualty Co.*, 514 F.2d 665, 672 (5th Cir.1975); *Amstar Corp. v. Domino's Pizza, Inc.*, 615 F.2d 252, 258 (5th Cir.1980) *cert. denied*, 449 U.S. 899, 101 S.Ct. 268, 66 L.Ed.2d 129 (1980). The bankruptcy court gave personal attention to the fact findings as demonstrated by the number of revisions he put the proposed findings of fact and conclusions of law through. *Amstar*, 615 F.2d at 258. The District Court also made oral findings. *See PGA*, 514 F.2d at 672. Though the findings and conclusions do not specifically refer to the transcript, they closely follow the evidence given there. *See, United States v. Marine Bancorporation*, 418 U.S. 602, 615 n. 13, 94 S.Ct. 2856, 2866, 41 L.Ed.2d 978 (1974); *FMC Corp. v. Varco Int'l, Inc.*, 677 F.2d 500, 501–502 n. 2 (5th Cir.1982); *compare* Findings and Conclusions at 14 *with* Conf. Hear. at 57. In view of the entire record, the findings of fact are not illogical or implausible. *Geyen v. Marsh*, 775 F.2d 1303, 1310 (5th Cir.1985).

## N. CONSTITUTIONAL POWER OF BANKRUPTCY COURT.

Appellants next ask whether the bankruptcy court had the constitutional power to enter final and binding orders. Appellants' challenge to the constitutional status of the bankruptcy court is frivolous. *In re Braniff Airways*, 700 F.2d 214, (5th Cir.), *cert. denied*, 461 U.S. 944, 103 S.Ct. 2122, 77 L.Ed.2d 1302 (1983) (holding the Emergency Interim Rule constitutional).

## III. LOUISE PICKENS.

## A. DUE PROCESS—REDUCTION FOR EXCLUSIVE TIME FOR FILING PLAN.

Louise Pickens argues that she was denied due process because the bankruptcy

---

**26.** Appellants' Brief on Common Issues at 6, 103–108.

**27.** *Id.* at 108.

court shortened her exclusive time for filing a plan for reorganization and retroactively applying the disclosure statement. The Court finds that Louise's due process rights were not denied. Her exclusive time for filing a plan was properly shortened and the disclosure statement was properly applied to her case.

### 1. Reduction of Exclusive Time for Filing Plan.

Appellant complains that her exclusive time for filing a plan of reorganization was improperly reduced. On November 21, 1983, Louise Pickens filed for Chapter 11 bankruptcy. Under 11 U.S.C. 1121 (1979),[28] there are 120 days after filing in which only the debtor may file a plan. Under this section, Louise would have had until March 22, 1984 to file her plan exclusively, barring reduction of her time. Her time to file her plan was reduced to January 24, 1983.

The Bankruptcy Code provides: "On request of a party in interest and after notice of a hearing, the court may for cause reduce or increase the 120–day period or the 180–day period referred to in this section." 11 U.S.C. § 1121(d) (1979).[29]

■ Hence the question becomes whether cause was shown to reduce the exclusive time. The legislative history indicates that "cause" might include an unusually large or unusually small case, delay by the debtor, or recalcitrance among creditors. H.R.Rep. No. 595, 95 Cong., 1st Sess. 406, *reprinted in* 1978 U.S. Code Cong. & Ad. News 5787, 6362. Appellees argue that Louise Pickens deliberately attempted to delay the confirmation of the entire plan by filing her bankruptcy.[30]

Appellees have also found case law wherein the exclusive time for filing was shortened by the bankruptcy court. The Court there noted that a major obstacle in the path to a successful reorganization in that case was the principal parties' acrimonious relations. *In re Crescent Beach Inn, Inc.*, 22 B.R. 155, 160–161 (Bankr.D.Me. 1982). This facet of *Crescent Beach* is amply matched in the instant case.[31]

### 2. Due Process—Retroactive Application of Disclosure Statement.

Louise Pickens never filed a plan; her bankruptcy estate was handled pursuant to the Joint Plan. Underlying the Joint Plan was the disclosure statement, which had been approved prior to Louise's bankruptcy. *See* 11 U.S.C. 1125(b). The disclosure statement was therefore made retroactively applicable to Louise Pickens.

■ Procedural due process imposes constraints on governmental decisions which deprive individuals of "property interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332, 96 S.Ct. 893, 901, 47 L.Ed.2d 18 (1976). When protected rights are implicated, the right to some kind of prior hearing is paramount. But the range of interests protected by procedural due process is

**28.** 11 U.S.C. § 1121(b) (1979) provides: *"Except as otherwise provided* in this section, only the debtor may file a plan until after 120 days after the date of the order for relief under this chapter."* (emphasis added).

**29.** This section applied at the time of the bankruptcy. The same section was later amended to read "On request of a party in interest made within the respective periods specified in subsection (c) of this section and after notice and a hearing, the court may for cause reduce or increase the 120–day period or the 180–day period referred to in this section." This amendment, however, only became effective with respect to cases filed 90 days after July 10, 1984. *See* Pub.L. 98–353 § 506, 98 Stat. 385 (1984). All cases here were filed prior to that date.

**30.** Louise Pickens filed for bankruptcy, though she had no assets separate from her husband's and though she had no creditors separate from her husband's. Therefore, though her community interest was already in bankruptcy because of Richard's filing for bankruptcy, she nevertheless filed for bankruptcy herself.

**31.** Each appellant, through the Brief on Common Issues, accuses appellees of ethical violations. Appellee moved for sanctions against appellants after the "hustle" letter was sent out. In February 1984, appellants moved to disqualify Lockheed's counsel and appellees moved to prevent appellant's counsel from becoming an attorney of record.

not infinite. *Board of Regents v. Roth,* 408 U.S. 564, 569–570, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972).

 The first independent reason why Louise has not shown that her due process rights have been trampled upon is that she has failed to show that additional process would have changed matters any. The Court held in *Mathews v. Eldridge* that "whether the administrative procedures provided here are constitutionally sufficient requires analysis of the governmental and private interests that are affected." *Mathews v. Eldridge,* 424 U.S. at 334, 96 S.Ct. at 902.[32] The *Mathews* Court said that the identification of the specific dictates of due process generally requires consideration of three distinct factors.

1. The private interest that will be affected by the official action;

2. the risk of an erroneous deprivation of such interest through the procedures used, and the probable value if any, of additional or substitute procedural safeguards; and

3. the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335, 96 S.Ct. at 903. The private interest to be affected by the official action is Louise Pickens' bankruptcy estate. All of appellant's bankruptcy estate consists of community property.[33] Appellant has not shown that any of her bankruptcy estate consists of separate property. The Court may presume, if necessary, that Louise's debts are community debts. Tex.Fam.Code 5.02 (1975). The Court finds that there is no risk of erroneous deprivation of Louise Pickens' community property interest in this bankruptcy, since there was adequate due process given to Richard Pickens' interest in the community property.[34] Louise has failed to show that any additional safeguards would have changed matters any. Louise failed to show that she would have offered any arguments different from those Richard had offered.

 A second independent reason to find no due process violation is that there was constructive notice given. The requirements for due process are not universal or unchanging. *Arnett v. Kennedy,* 416 U.S. 134, 155, 94 S.Ct. 1633, 1644, 40 L.Ed.2d 15 (1974). Due process is flexible and calls for such procedural protection as the particular situation demands. *Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972). In this case, Louise Pickens had constructive notice that her community interest was at stake because of Richard's declaration of bankruptcy. The Court presumes that most residents of Texas understand that the community property system is in effect.

A third independent reason to find no due process violation comes from case law. The Fifth Circuit faced a similar case in *In re Bleaufontaine, Inc.,* 634 F.2d 1383 (5th Cir.1981). In that case the bankruptcy court had issued a show cause order as to why a proposed sale of principal assets of bankruptcy estates should not be approved, and had two long hearings to evaluate the sale. *Id.* at 1385–1386. In that case, also, the appellants alleged that they were de-

---

**32.** Several of the cases cited in this section involve government employment. However, the principles from these cases are not limited to such facts. *See City of Kenosha v. Bruno,* 412 U.S. 507, 515, 93 S.Ct. 2222, 2227, 37 L.Ed.2d 109 (1973).

**33.** Disclosure Statement Hearing at 105 (hereinafter cited as Disc.Stmt.Hear.).

**34.** Property interests are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understanding that stem from an independent source such as state law. *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). In this case, Richard Pickens' bankruptcy estate consisted of his separate property and the community property belonging to himself and Louise Pickens. Dis.Stmt.Hear. at 105. Tex.Fam.Code 5.01(b) (1975); Tex.Fam. Code 5.02 (1975); *Horlock v. Horlock,* 533 S.W.2d 52, 60 (Tex.Civ.App.—Houston [14th Dist.] 1976, writ dism'd). Further, Richard's estate was so defined before and after Louise filed for bankruptcy. *See* Original Joint Plan of Reorganization ¶¶ 1.19, 1.23, and 3.28; Second Amended Joint Plan ¶ 1.24.

prived of their due process rights because they did not receive notice of the various orders throughout the bankruptcy sale proceeding. The *Bleaufontaine* Court held that the appellants' due process arguments would not prevail because though the Debtors were not there personally, they were represented by counsel. *Id.* at 1386, n. 3.

█ This Court therefore holds that the disclosure statement was properly made applicable to Louise Pickens' bankruptcy. Therefore, this Court holds that Louise Pickens was not denied due process of law when the bankruptcy court reduced her 120–day exclusive time to file a plan and that her due process rights were not abridged when the bankruptcy court applied the disclosure statement to her case.

## B. VALUE OF LOUISE PICKENS' INDIVIDUAL LAWSUIT.

█ Appellant next asks whether the bankruptcy court erred when it determined that the value of her individual lawsuit against Lockheed was zero and that the plan, as to her, met the requirements of 11 U.S.C. § 1129(a)(7) (1979).[35]

The Court finds that the bankruptcy court did not err when it found that the plan, as to Louise Pickens, met the requirements of 11 U.S.C. § 1129(a)(7) (1979). According to the schedules on Louise Pickens' petition, her debts were approximately $2,164.00 miscellaneous debts, $394,000 owed to the Small Business Administration ("SBA"), and a $500,000 personal liability to Lockheed. Appellant argues that she need only show that she can pay the $2,100.64 debt after paying the $500,000 debt to prove that the statutory requirement has not been met. Appellant's argument is based on a faulty premise, namely that the SBA debt would have been discharged in liquidation. 11 U.S.C. 523(a)(3) (1979). She further overlooks the Lock-

heed debt, which had grown with interest to $800,000 by the time of filing. Hence, appellant must not merely show that she can meet a $500,000 debt to Lockheed plus a $2,100.64 debt, rather she must show that she can pay over $1,000,000. Appellant failed to show this. Therefore, the bankruptcy court was correct in determining that the requirements of § 1129(a)(7)(A)(ii) were met.

## C. RECONVERSION OF LOUISE PICKENS' CASE.

Appellant next asks whether the bankruptcy court in converting her case from Chapter 7 back to a Chapter 11 case allegedly upon less than one day's notice without any showing that her creditors would be harmed in the absence of reconverting. Louise Pickens' counsel was notified on January 13, 1983 about the January 24, 1983 hearing.[36]

█ Under 11 U.S.C. 1112(a) (1979),[37] Mrs. Pickens had an absolute right to convert her Chapter 11 case to the Chapter 7 case. However, the conversion of a Chapter 11 case to Chapter 7 by the debtor under section 1112(a) is without prejudice to an application by a party in interest in the Chapter 7 case to have the case returned to Chapter 11. The absolute right of a debtor to convert the case to Chapter 7 is not a right to keep it there. 5 Collier on Bankruptcy, 1112.03 at 1112.10 (15th ed. 1979).

Bankr.Code section 706 allows the Court to convert a case under Chapter 7 to a Chapter 11 case. Decisions to convert are left to the sound discretion of the Court, based on what will most inure to the benefit of all parties in interest. H.R.Rep. No. 595, 95 Cong., 1st Sess. 380, *reprinted in* 1978 U.S.Code Cong. & Ad.News 5787, 6336.

---

35. *See* note 14, *supra.*

36. Disc.Stmt.Hear. at 110.

37. 11 U.S.C. 1112(a) (1979) provides: The debtor may convert a case under this chapter to a case under chapter 7 of this title unless—:

(1) the debtor is not a debtor in possession;
(2) the case was commenced as an involuntary case under this chapter; or
(3) the case was converted to a case under this chapter on other than the debtor's request.

■ Case law demonstrates that the good faith of the debtor bears on whether to dismiss a Chapter 11 case. *In re G–2 Realty Trust*, 6 B.R. 549, 552 (Bankr.D. Mass.1980). By analogy, the Court should consider the good faith of the debtor in converting a Chapter 11 to a Chapter 7 case. The bankruptcy court found that the "main purpose of the conversion is to interfere with or impede the Chapter 11 reorganization." [38]

Despite appellant's clearly dilatory tactic in attempting to convert to Chapter 7, appellant frivolously argues that appellant should have been given more notice concerning a hearing to reconvert appellant to Chapter 11.

## IV. RICHARD PICKENS.

### A. SECTION 1129(a)(7).

Appellant asks whether the requirements of section 1129(a)(7) [39] were met by the plan as to Richard Pickens in light of the allegedly huge overstatement of the Lockheed claim, the allegedly conclusive evidence of value of the individual lawsuit, the alleged likelihood of equitable subordination, and the alleged shifting of assets out of the Richard Pickens estate by the plan. Appellant's argument is predicated on the propriety of equitable subordination, i.e., that Lockheed's claims should be equitably subordinated to Richard's interest.

Equitable subordination is not proper here. Therefore, appellant's argument fails.

Appellant argues that the instant case has an "uncanny" resemblance to *Gannett Co. v. Larry*, 221 F.2d 269 (2nd Cir.1955), a case in which equitable subordination was permitted. *Id.* at 275. In that case as in this one, a large corporation wanted to insure that it would have an adequate amount of materials to run its business. In *Gannett*, the corporation needed newsprint, *id.* at 274, and in the instant case Lockheed needed aluminum. In both cases the large corporation loaned the debtor large amounts of money and in both cases there was a change in the economy for the worse. The similarities stop there.

In *Gannett* the large corporation owned the capital stock of the debtor. Further, four of the five directors of the debtor in *Gannett* were also directors of the corporation. *Id.* No such relationship existed in the instant case.

■ The test for equitable subordination is:

(1) The claimant must have engaged in some type of inequitable conduct;

(2) misconduct must have resulted in injury to the creditors of the bankrupt or conferred an unfair advantage on the claimant;

(3) equitable subordination of the claim must not be inconsistent with the provisions of the Bankruptcy Act.

*In re T.E. Mercer Trucking Co.*, 16 B.R. 176, 189 (Bankr.N.D.Tex.1981). Even conceding *arguendo* the first step of the test, the second step has not been proved. Further, another factor in the *Mercer* opinion was that there was extensive creditor control. *Id.* at 190. In this case there was no extensive creditor control. Therefore, equitable subordination is not proper here and appellant's argument fails.

### B. FAIR VALUATION OF RICHARD PICKENS' REAL ESTATE.

One provision of the Joint Plan was that certain land belonging to Richard's bankruptcy estate would be sold to Cressona Aluminum.[40] Appellant asks whether the bankruptcy court erred in approving the sale of the Pickens real estate for the price provided in the plan. Appellant alleges that under a liquidation, substantially greater value would have been realized for the creditors.

Cressona Aluminum bought 140 acres of land for $882,600. There was a great deal of disparity between the land appraisals

---

**38.** Conf.Hear. at 56.

**39.** *See* note 14, *supra.*

**40.** *See* Joint Plan at ¶ 5.2.

given by the opposing parties' appraisers. The Court does not find, however, that the bankruptcy court's findings were "clearly erroneous." They were not illogical or implausible, *Geyen v. Marsh*, 775 F.2d 1303, 1310 (5th Cir.1985), nor did they leave the Court with the definite and firm conviction that a mistake had been committed. *Amstar Corp. v. Domino's Pizza, Inc.*, 615 F.2d 252, 258 (5th Cir.1980) *cert. denied*, 449 U.S. 899, 101 S.Ct. 268, 449 F.2d 899 (1980).

### V. PICKENS INDUSTRIES, INC.

Appellant next asks whether the bankruptcy court erred when it determined that PII's individual lawsuit had no value and that the plan of reorganization satisfied the requirements of 11 U.S.C. § 1129(a)(7) (1979).[41] The Court finds that the bankruptcy court did not so err. Appellant states that it was a party plaintiff in the Pickens individual lawsuit against Lockheed. This is simply false.[42] Considering the veracity of appellant's assertion that it was a party plaintiff in Pickens individual lawsuit, the bankruptcy court properly refused to consider PII's claims in the Pickens individual lawsuit.

### VI. TEXAS EXTRUSION ET AL. V. PALMER, PALMER & COFFEE.

This non-bankruptcy case centers on attorneys' fees for the appellants' first lawyers. TEC and PII both filed for Chapter 11 on March 24, 1982. Roughly a month thereafter Palmer, Palmer and Coffee was hired to represent the debtors in possession. On January 3, 1983 Richard Pickens filed for bankruptcy, as did his wife on November 1, 1983. Palmer, Palmer & Coffee also served as attorneys for these two debtors. On February 15, 1984, Emil Lippe

was approved as additional counsel for each debtor. In July 1984, an order was entered allowing fees and expenses to the appellee. Approximately *one year later*, appellee filed proposed findings of fact and conclusions of law concerning the application. These self congratulatory proposed findings stated no less than six times that appellee had exercised the highest skill or ability in the bankruptcy proceedings. On literally his last day as bankruptcy judge, just before retirement, Judge John Ford hurriedly adopted these proposed findings verbatim, when it would have been a better idea to permit a successor to consider them.

The bankruptcy court adopted appellee's lengthy proposed findings verbatim, despite: (1) the unanimous opposition to such findings by the official creditors' committee, the trustee, and the creditors for appellee's failure to prosecute appellants' principal asset—their lawsuits against Lockheed Corporation; (2) appellee's failure to propose a plan of reorganization for appellants. The appellees admitted that they filed the fact findings to avoid a "collateral attack," [43] namely a malpractice suit against them.

This Court may set aside the bankruptcy court's fact findings if they are "clearly erroneous." Bankr.Rule 8013. "A finding of fact is clearly erroneous if in view of the entire record it is 'illogical or implausible.'" *Geyen v. Marsh*, 775 F.2d 1303, 1310 (5th Cir.1985). The Supreme Court and the Fifth Circuit have criticized courts for adopting, without change, fact findings drafted by counsel, particularly when the findings are conclusory statements unsupported by citation to the record. *See United States v. Marine Bancorporation*, 418 U.S. 602, 615 n. 13, 94 S.Ct. 2856, 2866 n. 13 41 L.Ed.2d 978 (1974);

---

**41.** *See* note 14, *supra.*

**42.** On page nine of its brief, appellant refers the Court to Conf.Hear.Ex.Vol. IV, Debtor's Exhibit 16. Upon examining this exhibit, the Court finds Appellants' First Amended Complaint and Jury Demand, a pleading that was never filed. It was not filed because it came pursuant to a motion to amend which was never granted. Therefore, the only parties in the personal law-

suit against Lockheed were Richard and Louise Pickens. See Conf.Hear.Ex.Vol. III, Plaintiff's Exhibit 25. Hence, Appellant's assertion tht PII was a party plaintiff in the individual lawsuit is simply false.

**43.** Transcript from a Hearing before Judge Abramson, Judge Ford's successor, at 11.

*FMC Corp. v. Varco Int'l, Inc.,* 677 F.2d 500, 501–502 n. 2 (5th Cir.1982). Not once do the Findings of Fact refer to the record in connection with the "high skill and ability" allegedly displayed by appellees. While the clearly erroneous rule still applies in such circumstances, the reviewing court " 'can take into account the [lower court's] lack of personal attention to factual findings in applying the clearly erroneous rule.' The appellate court can feel slightly more confident in concluding that important evidence has been inadequately considered when factual findings were not the product of personal analysis and determination by the trial judge." *Id.* A finding of fact is clearly erroneous "when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Amstar Corp. v. Dominos Pizza, Inc.,* 615 F.2d 252, 258 (5th Cir.1980), *cert. denied,* 449 U.S. 899, 101 S.Ct. 268, 66 L.Ed.2d 129 (1980). With these findings of fact, the bankruptcy court made no oral findings of fact. This indicates that the bankruptcy court did not give the findings of fact sufficient attention. *Professional Golfers Assoc. v. Bankers Life & Cas. Co.,* 514 F.2d 665, 672 (5th Cir.1975). The Court finds that the finding of fact and conclusions of law made by the bankruptcy court is clearly erroneous. The Court is left with the definite and firm conviction that a mistake has been committed and the Court finds it illogical and implausible that the bankruptcy court could have found that the appellees exercised the highest skill or ability in the bankruptcy proceedings, when appellees failed to submit a plan for reorganization and to properly prosecute the appellants' lawsuit against Lockheed.

Therefore, the bankruptcy court's findings of fact and conclusions of law concerning appellees' attorneys fees is null and void without any effect whatsoever.

## VII. CONCLUSION.

The bankruptcy court is affirmed in all things, except that its findings of fact and conclusions of law concerning attorney's fees for appellee Palmer, Palmer & Coffee is null and void.