FMC CORPORATION,
Plaintiff-Appellant,

v.

VARCO INTERNATIONAL, INC., Best
Industries, Inc. and Robert L. Witt,
Defendants-Appellees.

No. 81–2435.

United States Court of Appeals,
Fifth Circuit.

June 4, 1982.

Hosier, Niro & Daleiden, Ltd., Timothy J. Haller, Raymond P. Niro, Gerald D. Hosier, Chicago, Ill., for plaintiff-appellant.

Baker & Botts, Stephen G. Tipps, Houston, Tex., for defendants-appellees.

Before GEE, RUBIN and GARZA, Circuit Judges.

GEE, Circuit Judge:

While Robert L. Witt was employed by FMC Corporation as the engineering mana-

ger of its Brea, California, facility, he was offered and accepted a job as a vice president of engineering at Best Industries, a direct competitor of FMC. While at FMC, Witt had signed an agreement that prohibited unauthorized disclosure of trade secrets.[1] FMC has been a pioneer in the areas of oilfield fittings and flow control technology and in the past ten years has invested more than $12 million in research and development to invent, design, and develop its products. The most commercially significant of these new products designed and introduced by FMC is an increased-radius swivel joint, with the trademark "Longsweep," that provides flexibility in the connection of oil well piping. The manufacturing process for FMC's "Longsweep" swivel joints is carried out in FMC's manufacturing plant at Brea, California, and most of the research and engineering work on the "Longsweep" also takes place at the Brea facility. Witt is a mechanical engineer who was employed by FMC from August 1972 to September 1981 and had served as the engineering manager of the Brea facility since April 1976.

Best Industries, a wholly owned subsidiary of Varco International, produces many of the same products as FMC and has historically copied FMC's products where it could because it was the least expensive way to compete. In 1976, Best's president authorized efforts to copy FMC's two-inch/two-race "Longsweep" swivel joint, but it could not determine from a mere examination of the product itself the specific tooling, bending, and heat-treating techniques required to manufacture it. In 1981, FMC introduced a two-inch/three-race

"Longsweep" swivel joint to replace its two-inch/two-race joint. In June 1981, Best, still unable to produce either model of the swivel joint, solicited Robert Witt for the position of vice president of engineering because he had the "precise competitive background." On August 31, 1981, Witt announced his decision to leave FMC and joined Best in Houston. As vice president of engineering at Best, Witt would directly supervise the project manager responsible for developing Best's version of FMC's "Longsweep" swivel joints. On September 10, 1981, four days before Witt was scheduled to start work for Best, FMC filed suit and was granted a temporary restraining order that prohibited Witt from disclosing FMC's trade secrets and prohibited Best from placing Witt in a position that would create the inherent threat of disclosure and use of FMC's secrets. On September 21, 1981, following a week of expedited discovery, the district court held a hearing on FCM's application for a preliminary injunction. At the conclusion of the hearing, the district court denied the application from the bench, without considering any additional evidence that had been developed during the prior week of depositions. Eight days after the hearing, FMC filed a post-hearing motion for limited injunctive relief based on the entire record before the district court or, in the alternative, for an injunction pending appeal under Fed.R.Civ.P. 62(c). The court did not decide this motion, and on October 16, 1981, it adopted verbatim a set of proposed findings of fact and conclusions of law that had been submitted by defendants' counsel.[2] On November 16, 1981, this court

---

1. The contract provides in pertinent part:

3. All unpublished data and information relating to the Company's products, processes and business, whether reduced to writing or not, is confidential and is the sole property of the Company. I will not disclose any such confidential information to any person, either during or subsequent to my employment by the Company, except in the regular course of my employment by the Company, unless I have the Company's prior written consent.

. . . .

7. My obligations under this agreement with respect to inventions, developments and im-

provements made by me during my employment by the Company, and confidential information, records and other materials made available to me during my employment by the Company, shall continue in effect notwithstanding the termination of my employment. This agreement shall be binding upon FMC and its successors and assigns and on me and my heirs, executors, administrators and assigns.

2. We have consistently expressed our disapproval of the practice of unconditionally adopting findings submitted by one of the parties to the litigation. *Keystone Plastics, Inc. v. C & P Plastics, Inc.*, 506 F.2d 960, 962 (5th Cir. 1975).

granted an injunction pending appeal pursuant to Fed.R.App.P. 8(a), enjoining Witt "from divulging any information constituting a trade secret that he acquired during his work as an employee of the FMC Corporation."

The trial court found that FMC failed to prove any of the requirements for issuance of a preliminary injunction. These are:

(1) a substantial likelihood that the movant will prevail on the merits; (2) a showing that the movant will suffer irreparable injury unless the injunction issues; (3) proof that the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) a showing that the injunction, if it is issued, would not be adverse to the public interest.

*Compact Van Equipment Co. v. Leggett & Platt, Inc.*, 566 F.2d 952, 954 (5th Cir. 1978). We have determined that all four requirements were proved by FMC and therefore grant the preliminary injunction pending a trial on the merits of this case.

*Likelihood FMC will Ultimately Prevail*

Although the trial court did not specify which state law applied, counsel for Best stated at oral argument that they had been assuming that the law of Texas governs. We will therefore proceed on the assumption that Texas law applies.[3] Texas has adopted the Restatement definition of trade secrets:

A trade secret may be a device or process which is patentable; but it need not be that. It may be a device or process which is clearly anticipated in the prior art or one which is merely a mechanical improvement that a good mechanic can make. Novelty and invention are not requisite for a trade secret as they are for patentability. These requirements are essential to patentability because a patent protects against unlicensed use of the patent and device or process even by one

---

"While the 'clearly erroneous' rule of Fed.R. Civ.P. 52(a) applies to a trial judge's findings of fact whether he prepared them or they were developed by one of the parties and mechanically adopted by the judge, 'we can take into account the district court's lack of personal attention to factual findings in applying the clearly erroneous rule.'" *Amstar Corp. v. Domino's Pizza, Inc.*, 615 F.2d 252, 258 (5th Cir. 1980), *quoting Wilson v. Thompson*, 593 F.2d 1375, 1384 n.16 (5th Cir. 1979). The appellate court can feel slightly more confident in concluding that important evidence has been inadequately considered when factual findings were not the product of personal analysis and determination by the trial judge. *James v. Stockham Valves & Fitting Co.*, 559 F.2d 310, 314 n.1 (5th Cir. 1979).

**3.** We do not foreclose the issue of which state law applies if a party chooses to raise it before the district court in a trial on the merits. Although no attention was paid to this issue by the parties in the proceeding below, there is a possible conflicts of law problem. FMC is a Delaware corporation whose principal place of business is Chicago. Witt was working in a California branch operation of FMC when he signed the new employment contract with Best, a wholly owned subsidiary of Varco. Varco is a California corporation, and Best is a Texas corporation. The FMC contract signed by Witt prohibiting unauthorized disclosure of trade secrets was signed in Houston, Texas, in 1972 and states: "This agreement shall be interpret-

ed in accordance with the laws of the State of New York." This action was brought under the tort theories of unfair competition and intentional interference with contractual and business relations.

The defendants stated at oral argument that the case was tried on the assumption that Witt has "underlying legal obligations apart from the contract and that the contract does not create any obligations that would not exist at common law." If this is a tort case rather than a contract case, the tort the injunction seeks to prevent would have to occur in Texas. With this limited amount of information available to us, it appears that under the "most significant relationships" test recently adopted as the Texas choice of laws rule in tort cases, Texas law applies. *See Gutierrez v. Collins*, 583 S.W.2d 312, 318 (Tex.1979).

If this is a contract case, the question of what state law applies is a more difficult question. Under Texas conflicts law, "where the parties to a contract specify in the instrument that it is to be governed by the law of a particular state, that law will apply if it has a reasonable relationship to the contract." *Securities Investment Co. v. Finance Acceptance Corp.*, 474 S.W.2d 261, 271 (Tex.Civ.App.—Houston 1971, writ ref'd n.r.e.). Because the original complaint presents the case as a tort rather than contract case and nothing else was argued below, we shall proceed on that theory and apply Texas law.

who discovers it properly through independent research. The patent monopoly is a reward to the inventor. But such is not the case with a trade secret. Its protection is not based on a policy of rewarding or otherwise encouraging the development of secret processes or devices. The protection is merely against breach of faith and reprehensible means of learning another's secret. For this limited protection it is not appropriate to require also the kind of novelty and invention which is a requisite of patentability.

Restatement of Torts § 759, Comment b (omitted in 1979 Restatement); *K & G Oil, Tool & Service Co. v. G & G Fishing Tool Service,* 158 Tex. 594, 314 S.W.2d 782, 789 (1958). Beyond adopting the Restatement, Texas has followed a course somewhat different from that of other states. *See Sikes v. McGraw-Edison Co.,* 665 F.2d 731 (5th Cir. 1982), *rehearing denied,* 671 F.2d 150 (5th Cir. 1982), for a recent discussion of Texas' trade secret law. In *K & G Oil,* 314 S.W.2d at 788, the Texas Supreme Court stated:

It is unquestionably lawful for a person to gain possession, through proper means, of his competitor's products, and, through inspection and analysis, create a duplicate, unless, of course, the item is patented. But the mere fact that such lawful acquisition is available does not mean that he may, through a breach of confidence, gain the information in usable form and escape the efforts of inspection and analysis. The fact that a trade secret is of such a nature that it can be discovered by experimentation or other fair and lawful means does not deprive its owner of the right to protection from those who would secure possession of it by unfair means.

█ The district court was looking for much more than Texas law requires. The wrong legal standard was applied in the court's findings of fact nos. 7 and 10:

7. The process by which the LONGSWEEP is produced essentially employs standard manufactured techniques utilizing in large part commercially available equipment. The process involves few, if any, trade secrets. The "tricks of the trade" employed by FMC in the manufacturing process do not, in general, rise to the level of protectible trade secrets.

. . . .

10. Other items of trade secret information identified by FMC as facts to which Witt "had access" during his employment at FMC do not, with rare exception, constitute trade secrets of which Witt is in possession or which could relate to Best.

The court also applied the wrong definition of trade secret in its conclusion of the hearing on the preliminary injunction:

Well, I am not real sure that Mr. Witt knows exactly what a trade secret is. I think the proof failed to show that some of these things really rise to the level of a trade secret. There is no question that he might have been exposed to something that was, but he certainly didn't seem to have the knowledge, and this is why I say the main thing in the evidence and argument is the failure to show the likelihood of success when everything is ironed out that the man actually has sufficient trade secrets that there would be any irreparable injury or that he even had such things.

The problem with this analysis is that, even if only one FMC trade secret was disclosed by Witt or used by Best, it would still constitute an unlawful taking of FMC's property. It is not the number of trade secrets taken that determines whether the threat of irreparable harm exists. The fact that a single trade secret may be disclosed is enough.

█ FMC described to the district court several trade secrets as they relate to the "Longsweep" swivel joint manufacturing process. The evidence demonstrates that Best has been unable to duplicate the swivel joint (contrary to the representations made to the district court by Best) and that Best has had difficulty with the heat-treatment specifications, with the specific tooling requirements, and with the bending procedures. The testimony further revealed that

Witt has information about these procedures. The district court therefore clearly erred in finding no protectible trade secret. Because the manufacturing processes described by FMC do amount to trade secrets, particularly under the standards adopted by Texas courts, FMC has a substantial likelihood of ultimately prevailing on the merits.

### Threat of Irreparable Injury

Without a preliminary injunction, a threat exists that those FMC trade secrets known to Witt will be lost before a full trial on the merits could be held. Best's president testified that they had copied FMC products in the past and that he had authorized efforts to copy the "Longsweep" swivel joint. The evidence shows that Best was trying to duplicate the "Longsweep," but it was having trouble with the bending and heat-treating manufacturing steps. Witt admitted to having some confidential information regarding the joints and believed that he might have to disqualify himself from work in that area for Best. However, Witt testified that his new duties at Best will require him to work on Best's version of FMC's "Longsweep" swivel joints. Best's president also admits that Witt will have direct involvement in all aspects of research, development, design, and engineering of the swivel joint and that Best has placed no restriction on Witt's use of information that he gained from FMC:

Q By the way, when you put Mr. Witt in this position to involve himself with the "Longsweep" activities of your company, you are not going to impose any restrictions on him, are you?

A Only those restrictions that he imposes on himself because of some confidential or trade information they may have gained from FMC. But I don't know what that might be, so there is no way I could put a restriction on him.

Q If he (Mr. Witt) has a hot idea on how to make your manufacturing operation operate more efficiently, reduce costs, and so forth, you are not going to tell, "we don't want to know about it"?

A I'm not going to turn him off, no.

Since Best does not intend to limit Witt and since Witt himself indicated that he does not know exactly what constitutes a trade secret, it appears very possible that a trade secret will be revealed in violation of Witt's agreement with FMC. Witt is employed by Best in a position where he will be constantly called upon to decide what he believes he can and cannot properly disclose to Best. Best will expect Witt to contribute new ideas to improve the efficiency of any manufacturing process that ultimately is developed for the swivel joints, and Best's president testified that Witt's compensation and future with Best are directly dependent upon how well he performs his assigned duties:

Q Is the profitability of the company, Best, for example, in the new and evolving product area such as "Longsweep," is that something that will have an impact or effect on the level of bonuses to employees of Best?

A Profitability has an effect on everybody's bonus, including mine.

Q So, if there are cost reductions and higher profits in the "Longsweep" area, Robert Witt can expect to get a bigger bonus than he would otherwise expect?

A In any area.

Even assuming the best of good faith, Witt will have difficulty preventing his knowledge of FMC's "Longsweep" manufacturing techniques from infiltrating his work. Texas has recognized the need for injunctive relief in similar situations. In *Weed Eater, Inc. v. Dowling,* 562 S.W.2d 898, 902 (Tex.Civ.App.—Houston 1978, writ ref'd n.r.e.), the court stated:

Dowling has been employed by Hawaiian Motor Company to supervise the production of a device which it formerly purchased from Weed Eater. He set up the assembly line by which the product was produced by Weed Eater. Even in the best of good faith, Dowling can hardly prevent his knowledge of his former em-

ployer's methods from showing up in his work. The only effective relief for Weed Eater is to restrain Dowling from working for Hawaiian Motor Company in any capacity relating to the manufacture by Hawaiian Motor Company of a flexible line trimming device.

Given the facts of this case—that FMC has trade secrets, that Witt has knowledge of at least some of those secrets, and that Witt has been placed in a comparable position with a direct competitor without restriction against using or disclosing FMC's trade secrets—the fear of irreparable injury is realistic.

### Balance of Hardships

In the past ten years, FMC's fluid control division has invested more than $73 million in plants and new equipment to manufacture its products and more than $12 million in research and development to invent, design, and develop those products. The "Longsweep" swivel joint is by far the most commercially significant and profitable of the new products. FMC has taken extraordinary steps to maintain the secrecy of the manufacturing process for the "Longsweep." FMC requires all employees having access to this confidential material to sign agreements prohibiting the unauthorized disclosure of such secrets. It requires visitors to its Brea facility to obtain and display visitor badges and to be escorted at all times by an authorized FMC employee. It constructed a fence around its plant and posted signs that restricted access to manufacturing areas of the plant to authorized personnel only. It permitted the dissemination of its trade secrets among its employees only on a "need to know" basis. It installed an alarm system and established a separate manufacturing area for its "Longsweep" bending operation. All these procedures were put into effect to assure that FMC could maintain its competitive edge over others in the industry. This would be lost if Best were allowed to use Witt's technical knowledge of the swivel design to produce its own similar product.

On the other hand, the injunction will prevent Best from doing only what they already say they will not do. Best's president and Witt both testified that they planned to use no trade secrets that Witt gained from FMC. The president told the court that Witt was hired for his managerial, not technical, skills. The injunction is necessary, however, because Best argues that the items described by FMC as trade secrets do not constitute trade secrets. Therefore, without the injunction, Witt may, out of ignorance of what information constitutes a trade secret, reveal the confidential matters FMC seeks to protect.

### Public Policy

We are balancing the right of an employee to advance his career by accepting the better offer of a competitor against the right of a corporation to protect its trade secrets. Certainly Best has the right to copy FMC's unpatented devices, and certainly Witt can accept employment away from FMC. But Witt signed an agreement that forbids his disclosure of FMC's trade secrets. The function of trade secret law is that of "condemning the employment of improper means to procure the trade secret." *K & G Oil*, 314 S.W.2d at 788. Best claims that it can develop its version of FMC's "Longsweep" swivel joint without the aid of Witt's expertise. If so, it is allowed to do so under the law. Our duty is only to see that it does not utilize trade secrets that Witt has been forbidden to divulge.

We therefore REVERSE the order of the district court and GRANT the injunction. Pending a trial on the merits in this case, Robert L. Witt is enjoined from divulging any information constituting a trade secret that he acquired during his work as an employee of the FMC Corporation, and Best Industries is enjoined from placing or maintaining Witt in a position that poses an inherent threat of disclosure or use of FMC's trade secrets. It is so ORDERED.