COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-04-142-CV
  
  
IAC, 
LTD., BONDED STRUCTURES, LTD.,                               APPELLANTS
VAN 
HORN AVIATION, L.L.C., AND PARTS
MANUFACTURING 
ASSOCIATES
   
V.
   
BELL 
HELICOPTER TEXTRON, INC.                                             APPELLEE
  
  
------------
 
FROM 
THE 67TH DISTRICT COURT OF TARRANT COUNTY
 
------------
 
OPINION
 
------------
        In 
this interlocutory appeal,[1] appellants[2] appeal the trial court’s order enjoining them from using 
trade secrets relating to Bell Helicopter Textron, Inc.’s 206B and OH-58 
helicopter blades.  In eight issues, appellants contend that the trial 
court erred in granting the temporary injunction, excluding the testimony of an 
absent witness, and setting the amount of the bond, and that the temporary 
injunction is defective on its face.  We will affirm.
        In 
an appeal from an order granting or denying a temporary injunction, the scope of 
review is restricted to the validity of the order granting or denying 
relief.  Walling v. Metcalfe, 863 S.W.2d 56, 58 (Tex. 1993); Fox 
v. Tropical Warehouses, Inc., 121 S.W.3d 853, 857 (Tex. App.—Fort Worth 
2003, no pet.).  Whether to grant or deny a request for a temporary 
injunction is within the trial court’s discretion, and we will not reverse its 
decision absent an abuse of discretion.  Butnaru v. Ford Motor Co., 
84 S.W.3d 198, 204 (Tex. 2002); Fox, 121 S.W.3d at 857.  
Accordingly, when reviewing such a decision, we must view the evidence in the 
light most favorable to the trial court’s order, indulging every reasonable 
inference in its favor, and determine whether the order was so arbitrary that it 
exceeds the bounds of reasonable discretion.  Fox, 121 S.W.3d at 
857; Univ. Health Svcs. v. Thompson, 24 S.W.3d 570, 576 (Tex. 
App.—Austin 2000, no pet.).  A trial court does not abuse its discretion 
if it bases its decision on conflicting evidence and evidence in the record 
reasonably supports the trial court’s decision.  Davis v. Huey, 
571 S.W.2d 859, 862 (Tex. 1978); Fox, 121 S.W.3d at 857.  An abuse 
of discretion does not occur as long as there is some evidence to support the 
trial court’s decision.  Int’l Fid. Ins. Co. v. Wise Co. Bail Bd., 
83 S.W.3d 257, 260 (Tex. App.—Fort Worth 2002, no pet.).
        Appellants 
are trying to compete with Bell in the helicopter replacement blade 
market.  They have spent approximately one million dollars to design and 
prepare for the manufacture of a replacement blade for Bell’s 206B helicopter, 
which would be priced slightly lower than Bell’s blade.  In 2001, Jim Van 
Horn formed Van Horn Aviation, L.L.C. to develop the 206B replacement 
blade.  Randy Stevens, principal of IAC, Ltd., agreed to manufacture and 
market the replacement blade.[3]  At the time, 
IAC, Ltd. was a Customer Service Facility (“CSF”) for Bell. As a CSF, IAC, 
Ltd. received proprietary data relating to the Bell 206B rotor blade.  
Stevens agreed to use the data disclosed by Bell to IAC, Ltd. solely for the 
purpose of repairing Bell helicopters.
        Van 
Horn planned to use public domain documents, reverse engineering, and his 
original design to design the replacement blade.  Knowing that Bell’s 
OH-58 blade was similar to its 206B blade, for which he was unable to obtain 
public documents, Van Horn purchased the Depot Maintenance Work Report (“DMWR”) 
for Bell’s OH-58 helicopter from Newport Aeronautical Sales.  Using the 
information in the DMWR, he then performed tests on a 206B blade to determine 
the degree of similarity between it and the OH-58 blade.  His tests showed 
that the contour and twist data for the two blades were identical.  Van 
Horn used the OH-58/206B contour and twist data for the replacement blade as 
well as some of the same sealants and adhesives that Bell uses for the 206B 
blade.
        When 
Bell learned that appellants were marketing their replacement blade, it sued 
them for misappropriation of trade secrets, unfair competition, theft of trade 
secrets, breach of contract, and breach of fiduciary duty.  On March 16, 
2004, Bell applied for and received a temporary restraining order.  On May 
6, 2004, after a hearing, the trial court signed an order granting Bell a 
temporary injunction.
        In 
appellants’ first, second, third, and sixth issues, they contend that the 
trial court abused its discretion in granting the temporary injunction because 
Bell failed to establish the existence of a trade secret and show irreparable 
harm.
        To 
be entitled to a temporary injunction, the applicant must plead a cause of 
action and show a probable right to recover on that cause of action and a 
probable, imminent, and irreparable injury in the interim.  Butnaru, 
84 S.W.3d at 204.  A probable right of recovery is shown by alleging a 
cause of action and presenting evidence tending to sustain it.  Fox, 121 
S.W.3d at 857; Miller Paper Co. v. Roberts Paper Co., 901 S.W.2d 593, 597 
(Tex. App.—Amarillo 1995, no writ).  An injury is irreparable if the 
injured party cannot be adequately compensated in damages or if the damages 
cannot be measured by any certain pecuniary standard.  Butnaru, 84 
S.W.3d at 204; Fox, 121 S.W.3d at 857.
        One 
of the causes of action upon which Bell based its request for a temporary 
injunction was its trade secret misappropriation claim.  Under Texas law, 
trade secret misappropriation is established by showing that a trade secret 
existed, the trade secret was acquired through a breach of a confidential 
relationship or was discovered by improper means, and the defendant used the 
trade secret without the plaintiff’s authorization.  Avera v. Clark 
Moulding, 791 S.W.2d 144, 145 (Tex. App.—Dallas 1990, no writ); Alcatel 
USA, Inc. v. DGI Tech., 166 F.3d 772, 784 (5th Cir. 1999).  In 
determining whether to grant a trade secret protection by a temporary 
injunction, a trial court does not determine whether the information sought to 
be protected is, in law and fact, a trade secret; rather, the trial court 
determines whether the applicant has established that the information is 
entitled to trade secret protection until the trial on the merits.  Mabrey 
v. Sandstream, Inc., 124 S.W.3d 302, 311 (Tex. App.—Fort Worth 2003, no 
pet.); Ctr. for Econ. Justice v. Am. Ins. Ass’n, 39 S.W.3d 337, 343 
(Tex. App.—Austin 2001, no pet.).  That an order is issued granting trade 
secret protection does not mean the protected information is a trade 
secret.  Ctr. for Econ. Justice, 39 S.W.3d at 343.
        A 
trade secret is “any formula, pattern, device or compilation of information 
which is used in one’s business and presents an opportunity to obtain an 
advantage over competitors who do not know or use it.”  In re Bass, 
113 S.W.3d 735, 739 (Tex. 2003) (quoting Computer Assocs. Int’l, Inc. v. 
Altai, Inc., 918 S.W.2d 453, 455 (Tex. 1996)).  The supreme court has 
identified six nonexclusive criteria a court should consider in determining 
whether information is entitled to trade secret protection:
  
(1) the extent to which the information is known outside the holder’s 
business; (2) the extent to which it is known by employees and others involved 
in the holder’s business; (3) the extent of the measures taken by the holder 
to guard the secrecy of the information; (4) the value of the information to the 
holder and its competitors; (5) the amount of effort or money expended by the 
holder in developing the information; and (6) the ease or difficulty with which 
the information could be properly acquired or duplicated by others.
 
 
Id. 
 Information generally known and readily available is not protectable, but 
the fact that information is discoverable by lawful means does not deprive its 
owner of protection from one acquiring it by unfair means.  In re Bass, 
113 S.W.3d at 739; Fox, 121 S.W.3d at 858.
        When 
Bell’s evidence is viewed in light of the Bass factors, it supports the 
trial court’s finding that the 206B data Bell disclosed to IAC, Ltd. and the 
DMWR obtained by Van Horn are entitled to trade secret protection until trial on 
the merits in the underlying case.
        With 
respect to the 206B data, Bell produced evidence showing the measures it takes 
to guard the secrecy of the data, the amount of effort Bell expended in 
developing the data, the data’s value, and the difficulty with which the data 
could be duplicated by others.  Bell showed that it guards the secrecy of 
its data by storing the originals of its drawings and specifications in a vault, 
posting security guards at its plants, requiring persons entering the plant to 
identify themselves and wear identification badges, checking material going in 
and out of the plant, limiting access to data on its internal computer system to 
persons with appropriate system identification and passwords, and using 
confidentiality agreements with its vendors to whom it supplies proprietary 
data.  A Bell engineer testified that thirty to forty thousand hours were 
required to develop the design of the blade and another thirty to forty thousand 
hours were needed to develop techniques for its production.  An employee in 
Bell’s marketing and sales department estimated that the replacement blade 
market was worth approximately twelve million dollars a year.  Further 
testimony showed that it would not be possible to duplicate the specifications 
for the blade with the necessary degree of precision through reverse 
engineering.
        With 
respect to the DMWR, Bell produced evidence of the measures it takes to protect 
the secrecy of the data contained in the DMWR and the extent to which the 
information is known outside of Bell’s business.  Bell showed that the 
DMWR was created using Bell drawings that would have been marked “confidential 
to Bell” and that the DMWR states on its face that it is not available through 
Attorney General publication centers.[4]  
Additional evidence revealed that the drawings used to create the DMWR are not 
available through a Freedom of Information Act (“FOIA”) request.  
Moreover, Newport Aeronautical, Van Horn’s source of the DMWR, provides the 
DMWR only on a “need to know basis” and does not provide electronic access 
to it.
        This 
evidence is some evidence that the 206B data and the DMWR are entitled to trade 
secret protection.[5]  Therefore, we turn to the 
second element of Bell’s trade secret misappropriation claim, namely, whether 
appellants acquired the trade secrets through a breach of a confidential 
relationship or discovered it by improper means.
        Several 
witnesses testified, and Bell’s Customer Service Facility Agreement showed, 
that Bell disclosed 206B data to IAC, Ltd. so that IAC, Ltd. could repair 
Bell’s helicopters.  Pursuant to a confidentiality agreement, however, 
IAC, Ltd. had an obligation to keep the Bell data confidential.  Stevens, 
the president of IAC, Ltd., was a partner with Van Horn in appellants’ 206B 
replacement blade project. IAC, Ltd. kept the 206B data from Bell in its 
library, and Van Horn had access to it.  The contour and twist data for the 
206B blade is identical to that for the replacement blade.  Such evidence 
tends to support a reasonable inference that appellants acquired the 206B data 
through a breach of IAC, Ltd.’s confidential relationship with Bell.  
Furthermore, Bell’s showing that the DMWR was not available through Attorney 
General publication centers, the drawings upon which the DMWR was based were not 
available through a FOIA request, and Newport Aeronautics provided the DMWR on a 
“need to know” basis is evidence that raises the possibility that the 
disclosure of the DMWR was improper.[6]  See 
Williams v. Curtiss-Wright Group Corp., 681 F.2d 161, 164 (3d Cir. 1981) 
(holding that under section 757 of the Restatement of Torts,[7] 
the apparently erroneous disclosure of jet engine specifications through a FOIA 
request did not affect appellant’s liability for misappropriation of those 
trade secrets).
        Bell 
also supported the third element of its misappropriation of trade secrets claim 
by producing some evidence that appellants used the 206B data and DMWR without 
Bell’s authorization.  Bell showed that appellants used contour and twist 
data contained in both the 206B data disclosed to IAC, Ltd. and the DMWR and 
that they used primer and adhesive specifications present in the 206B 
data.  In addition, Van Horn created his certification plan to submit to 
the Federal Aviation Administration for the 206B project the same day he 
purchased the DMWR. IAC, Ltd.’s confidentiality agreement expressly prohibited 
it from using the 206B data, and Bell did not authorize Van Horn to use the Bell 
data contained in the DMWR.  Because Bell presented some evidence to 
support each element of its trade secret misappropriation claim, it has shown a 
probable right to recover under this cause of action.  Miller Paper Co., 
901 S.W.2d at 597.
        Next 
we review whether Bell met its burden of showing that a probable, imminent, and 
irreparable injury will result before trial absent a temporary injunction.  
The evidence shows that appellants have possession of Bell data entitled to 
trade secret protection and are actively using that information to compete with 
Bell in the replacement blade market.  When a defendant possesses trade 
secrets and is in a position to use them, harm to the trade secret owner may be 
presumed.  Fox, 121 S.W.3d at 860; see also T-N-T Motorsports, 
Inc. v. Hennessey Motorsports, 965 S.W.2d 18, 24 (Tex. App. —Houston [1st 
Dist.] 1998, no pet.) (holding that appellant possessed confidential information 
and was in a position to use it; thus, appellant was likely to use information 
to former employer’s detriment).  The threatened disclosure of trade 
secrets constitutes irreparable injury as a matter of law.  Williams v. 
Compressor Eng’g Corp., 704 S.W.2d 469, 471 (Tex. App.—Houston [14th 
Dist.] 1986, writ ref’d n.r.e.) (citing FMC Corp. v. Varco Int’l, Inc., 
677 F.2d 500, 503 (5th Cir.1982)).
        Additional 
evidence shows that appellants’ blades were going to be available for shipment 
around June 15, 2004 and would be priced lower than Bell’s blade. Bell’s 
Executive Director of Integrated Product Solutions testified that the creation 
of a lower-priced 206B replacement blade market would undermine the goodwill 
that Bell has with its clients, leading to an incalculable loss of business 
goodwill.  Loss of business goodwill or loss that is not easily calculated 
in pecuniary terms is sufficient to show irreparable injury for purposes of 
obtaining a temporary injunction.  Byrd Ranch, Inc. v. Interwest Sav. 
Assoc., 717 S.W.2d 452, 454-55 (Tex. App.—Fort Worth 1986, no writ); Martin 
v. Linen Sys. for Hosp., Inc., 671 S.W.2d 706, 710 (Tex. App.—Houston [1st 
Dist.] 1984, no writ).  Accordingly, Bell has satisfied the imminent and 
irreparable injury requirement.
        Based 
on all the foregoing evidence, we hold that Bell satisfied the temporary 
injunction requirements for its trade secret misappropriation claim.  
Therefore, the trial court did not abuse its discretion by granting the 
temporary injunction.  We overrule appellants’ first, second, third, and 
sixth issues.[8]
        In 
their fourth and fifth issues, appellants complain that the temporary injunction 
is unduly vague, imprecise, and devoid of required findings.  Specifically, 
they complain that the temporary injunction fails to set forth the reasons for 
its issuance, explain why Bell would suffer irreparable harm without an 
injunction, and state the precise conduct proscribed by the injunction.  
They also complain that the injunction is overbroad in its limitation of their 
livelihood beyond the scope of any putative trade secret or contractual 
protection.
        Every 
order granting an injunction shall set forth the reasons for its issuance. Tex. R. Civ. P. 683.  The trial 
court is not required to explain its reasons for believing that the applicant 
has shown a probable right to final relief,[9] but it 
must give the reasons why injury will be suffered if the interlocutory relief is 
not ordered.  Cook United, Inc., 464 S.W.2d at 106, Transp. Co. 
of Tex. v. Robertson Transp., 261 S.W.2d 549, 553 (1953); Hamby, 609 
S.W.2d at 868.  The reasons given by the trial court for granting or 
denying a temporary injunction must not be mere conclusionary statements.  Int’l 
Bhd. of Elec. Workers Local Union 479 v. Becon Const. Co., Inc., 104 S.W.3d 
239, 244 (Tex. App.—Beaumont 2003, no pet.); Byrd Ranch, Inc., 717 
S.W.2d at 454.  The requirement of specifying the reasons for granting a 
temporary injunction is mandatory, and noncompliance amounts to an abuse of 
discretion.  Hamby, 609 S.W.2d at 868; Toby Martin Oilfield 
Trucking, Inc. v. Martin, 640 S.W.2d 352, 355 (Tex. Civ. App.—Houston [1st 
Dist.] 1982, no writ).
        In 
this case, the injunction identifies Bell’s harm and explains why it is 
irreparable.  It explicitly states that Bell has shown that appellants have 
possession of Bell data entitled to trade secret protection and are actively 
using that information to compete with Bell in the replacement blade 
market.  Because harm to the trade secret owner may be presumed when a 
defendant possesses trade secrets and is in a position to use them, Fox, 121 
S.W.3d at 860; T-N-T Motorsports, Inc., 965 S.W.2d at 24, the trial 
court’s findings about appellants’ possession and use of Bell helicopter 
blade information constitute a reason that Bell would be harmed without 
injunctive relief.  The injunction further states that Bell’s injury is 
irreparable because “it cannot be adequately compensated in damages or the 
damages cannot be measured by any pecuniary standard” and that “a legal 
remedy may be also inadequate since an award of damages may come too 
late.”  Accordingly, we hold that the injunction adequately sets forth 
the reasons for its issuance by identifying Bell’s harm and explaining why it 
is irreparable.[10]
        We 
now turn to appellants’ complaint that the trial court failed to state the 
precise conduct proscribed by the injunction.  Appellants argue that the 
injunction specifies neither the information at issue nor the manner in which it 
may be used.
        Every 
order granting an injunction shall be specific in terms; it shall describe in 
reasonable detail and not by reference to the complaint or other document the 
act or acts sought to be restrained. Tex. R. Civ. P. 683.  In this case, 
the injunction enjoins appellants and their agents, officers, servants, 
employees and attorneys, and anyone in active concert or participation with 
them, who receive actual notice of the injunction by personal service or 
otherwise, from the following behavior:
   
(1) using Bell trade secrets and confidential information in the manufacture of 
replacement blades for Bell’s 206B helicopter in competition with Bell; (2) 
disclosing Bell trade secrets to additional third parties; (3) directly or 
indirectly disclosing, transferring or using Bell’s proprietary information in 
any way, shape, manner or form; (4) destroying, altering, concealing or 
modifying any of their documents, records, electronic data, related to their 
activity in connection with the design, manufacture and testing of replacement 
blades; (5) copying, communicating, transmitting, publishing, disclosing or 
transferring to any person, any of Bell’s proprietary information related to 
this case; and (6) destroying, altering, concealing, or modifying any documents 
or records, including electronic data, concerning the gathering, use and/or 
disclosure of Bell proprietary information.
 
 
The 
meaning of “Bell trade secrets and information” is apparent from the text of 
the injunction.  The injunction states that “Bell has shown that the 
information at issue is proprietary to Bell and is trade secret.”  It 
goes on to identify the “information at issue” as information pertaining to 
Bell’s 206B and OH-58 helicopter blades.  The injunction clearly 
prohibits appellants from using, disclosing, destroying, transferring, copying, 
communicating, transmitting or publishing this information.  Thus, the 
injunction is sufficiently specific.
        Because 
the injunction meets the requirements of Rule 683 by specifying the acts from 
which appellants are restrained and stating the reasons for its issuance, we 
overrule appellants’ fourth and fifth issues.
        In 
appellants’ seventh issue, they contend that the trial court erred in 
excluding the testimony of George Posey, the president of Newport Aeronautical 
Sales.  Appellants sought testimony from Posey that he obtained the DMWR 
through a FOIA request.  They obtained an affidavit from Posey and arranged 
for him to testify by telephone.  The trial court sustained Bell’s 
objection to Posey’s testimony in either form because appellants did not list 
him as a witness.  Appellants argue that the trial court abused its 
discretion in excluding Posey’s testimony because the expedited nature of the 
temporary injunction hearing was good cause for his nondisclosure and because 
his testimony was rebuttal testimony.
        A 
trial court must exclude a witness besides a named party if the witness was not 
disclosed unless the court finds that there was good cause for the failure to 
timely respond or that the failure to timely respond would not unfairly surprise 
or prejudice the other parties.  Tex. 
R. Civ. P. 193.6(a).  The burden of establishing good cause or the 
lack of unfair surprise or prejudice is on the party seeking to call the 
witness. Tex. R. Civ. P. 193.6(b).  The 
Tarrant County Local Rules also require that the parties deliver to the court 
and the other parties a witness list at the time they report for trial. Fort Worth (Tex.) Civ. Dist. Ct. R. 3.03(c).  
On appeal, the party objecting to the exclusion of the testimony of an 
unidentified witness must show that the trial court abused its discretion in 
making its ruling.  Beam v. Chaney, 56 S.W.3d 920, 922 (Tex. 
App.—Fort Worth 2003, pet. denied).
        Here, 
the trial court did not abuse its discretion in excluding Posey’s testimony 
because appellants could have, and should have, listed Posey as a witness before 
the hearing.  Appellants obtained an affidavit from Posey two days before 
the hearing, yet they did not disclose their intention to call him as a witness 
until they sought to admit his testimony during their case-in-chief.  
Because they offered Posey’s testimony during their case-in-chief, it cannot 
properly be characterized as rebuttal testimony.  See Tex. R. Civ. P. 265 (stating that 
rebuttal testimony shall be offered after both sides present their 
cases-in-chief).  Furthermore, the record is devoid of any showing by 
appellants that Bell would not be unfairly surprised or prejudiced by Posey’s 
testimony.
        Posey’s 
proffered testimony was also inadmissible hearsay.  See Tex. R. Evid. 802.  His affidavit 
did not fall under any exception to the hearsay rule and his telephonic 
testimony was inadmissible because he had not been previously deposed and it 
would not have been visually recorded.  See Tex. Civ. Prac. & Rem. Code Ann. § 
30.012 (Vernon Supp. 2004-05).
        Finally, 
even if the exclusion of Posey’s testimony had been error, it would not have 
been harmful because Bell produced some evidence that the DMWR contained trade 
secrets, and the apparently erroneous disclosure of trade secrets through a FOIA 
request does not affect appellants’ liability for misappropriation of those 
trade secrets.  Williams, 681 F.2d at 164. For all these reasons, we 
overrule appellants’ seventh issue.
        In 
appellants’ final issue, they complain that the trial court erred in setting 
the amount of Bell’s bond at $350,000 because it is entirely 
insufficient.  The trial court is required to set a bond when it grants a 
temporary injunction. Tex. R. Civ. P. 684.  The applicant 
must post the bond, and it is payable to the adverse party if the temporary 
injunction is dissolved at trial.  Id.  The purpose of a bond 
is to provide protection to the enjoined party for any possible damages 
occurring as a result of the injunction.  Bayoud v. Bayoud, 797 
S.W.2d 304, 312 (Tex. App.—Dallas 1990, writ denied).  The determination 
of the adequacy of the bond set by the trial court is to be made on a 
case-by-case basis based upon the record before the reviewing court.  Maples 
v. Muscletech, Inc., 74 S.W.3d 429, 431 (Tex. App.—Amarillo 2002, no 
pet.); Stone v. Griffin Communications & Sec. Sys., Inc., 53 S.W.3d 
687, 696 (Tex. App.—Tyler 2001, no pet.).  The amount of a bond is within 
the trial court’s sound discretion and will not be disturbed on appeal absent 
an abuse of that discretion.  Four Stars Food Mart, Inc. v. Tex. 
Alcoholic Beverage Comm’n, 923 S.W.2d 266, 269 (Tex. App.—Fort Worth 
1996, no writ); Khaledi v. H.K. Global Trading, Ltd., 126 S.W.3d 273, 286 
(Tex. App.—San Antonio 2003, no pet.); Maples, 74 S.W.3d at 431.
        The 
record before us does not indicate that the trial court abused its discretion in 
setting the amount of the bond.  Although appellants put on evidence that 
their investment costs exceeded the bond amount, they would not be able to 
recover those costs if the temporary injunction were dissolved at trial because 
their investment costs would not be damages caused by the issuance of the 
injunction.  See Bayoud, 797 S.W.2d at 312.  
Furthermore, nothing in the record shows that appellants’ lost profits for the 
duration of the injunction would exceed $350,000.  Van Horn merely 
testified that “the income that we expected to derive from the manufacturing 
and selling rotor blades to support my family would be lost.”  This 
testimony is insufficient to prove lost profits.  See Tex. 
Instruments, Inc. v. Teleton Energy Mgmt., Inc., 877 S.W.2d 276, 279 (Tex. 
1994) (holding that lost profits should be supported with data from which they 
may be ascertained with a reasonable degree of certainty and exactness and will 
not be supported by uncertain or speculative evidence).  Therefore, we 
overrule appellants’ final issue and affirm the trial court’s order granting 
the temporary injunction.
   
   
                                                                  JOHN 
CAYCE
                                                                  CHIEF 
JUSTICE
 
 
 
PANEL 
A:   CAYCE, C.J.; DAUPHINOT and GARDNER, JJ.
 
DELIVERED: 
March 3, 2005


NOTES
1.  
See Tex. Civ. Prac. & Rem. 
Code Ann. § 51.014(a)(4) (Vernon Supp. 2004-05).
2.  
IAC, Ltd., f/k/a IAC Co., d/b/a International Aviation Composites; Bonded 
Structures, Ltd., f/k/a Parsons Composites, L.L.C.; Van Horn Aviation, L.L.C.; 
and Parts Manufacturing Associates
3.  
The other appellants, Bonded Structures, Ltd. and Parts Manufacturing 
Associates, are owned by Randy Stevens and are also associated with the 
manufacture of the replacement blade.
4.  
Relying on Numed, Inc. v. McNutt, 724 S.W.2d 432, 435 (Tex. App.—Fort 
Worth 1987, no writ), appellant argues that the 206B data lost its trade secret 
protection when Bell disclosed the OH-58 data to the Army because then it could 
be “discovered by anyone.”  Appellant assumes that the Army disclosed 
the DMWR for the OH-58 helicopter to its vendors without restricting its 
use.  The fact that the DMWR was not available through Attorney General 
publication centers, however, is some evidence that the Army took steps to limit 
the availability of the DMWR and that it was not discoverable “by anyone.”
5.  
This case is distinguishable from Flotec, Inc. v. S. Research, Inc., 16 
F. Supp. 2d 992, 1004-05 (S.D. Ind. 1998).  In Flotec, an oxygen 
tank pressure valve producer sought injunctive relief against a competitor to 
whom it had given drawings of several component parts.  The court affirmed 
the trial court’s denial of relief, citing the appellant’s failure to 
“take even the most elementary steps to protect the technical drawings it 
provided to [the appellee].”  Flotec, 16 F. Supp. 2d at 
1004-05.  Unlike the appellant in Flotec, who did not mark its 
drawings confidential or obtain a confidentiality agreement from the appellee, 
Bell marked its OH-58 drawings confidential, used confidentiality agreements 
with its vendors, and took additional measures to safeguard its proprietary 
information.
6.  
Even if the DMWR was properly obtained through a FOIA request, Bell may still 
prevail on its misappropriation of trade secrets claim by proving its allegation 
that appellants actually used the 206B data that Bell had disclosed to IAC, 
Ltd., rather than the OH-58 data contained in the DMWR.  The fact that 
information is discoverable by lawful means does not deprive its owner of 
protection from one acquiring it by unfair means.  See In re Bass, 
113 S.W.3d at 739; Fox, 121 S.W.3d at 858.
7.  
The pertinent part of the Restatement states, “[o]ne who discloses or uses 
another’s trade secret, without a privilege to do so, is liable to the other 
if . . . he learned the secret with notice of the facts that it was a secret and 
that its disclosure was made to him by mistake.”  Restatement (First) of Torts § 757 
(1939); Stewart & Stevenson Svcs., Inc. v. Serv-Tech, Inc., 879 
S.W.2d 89, 95 (Tex. App.—Houston [14 Dist.] 1994, writ denied).  The 
trade secret sections of the Restatement of Torts are now found in the Restatement (Third) of Unfair Competition.  
See Restatement (Third) of Unfair 
Competition §§ 39-45 (1995); In re Bass, 113 S.W.3d at 739.
8.  
Because Bell satisfied the temporary injunction requirements for its trade 
secret misappropriation claim, we do not address whether Bell presented 
sufficient evidence to sustain the temporary injunction based on its other 
causes of action.  See Tex. 
R. App. P. 47.1.
9.  
The trial court was not required to explain its reasons for believing that Bell 
had shown a probable right to final relief.  See State v. Cook United, 
Inc., 464 S.W.2d 105, 106 (Tex. 1971); Smith v. Hamby, 609 S.W.2d 
866, 868 (Tex. Civ. App.—Fort Worth, 1980 no writ).  Therefore, we will 
not address appellants’ arguments attacking that portion of the injunction.
10.  
The injunction order in this case is distinguishable from the order in Hamby, 
which did not state why the applicant would suffer harm or be endangered by 
probable injury if not granted the preliminary injunction.  Hamby, 
609 S.W.2d at 868.