# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-10-00293-CV

### Chris Hill and Donald McKinney, Appellants

### v.

### McLane Company, Inc., Appellee

### FROM THE DISTRICT COURT OF BELL COUNTY, 169TH JUDICIAL DISTRICT
### NO. 239,345-C, HONORABLE GORDON G. ADAMS, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellee McLane Company, Inc., sued two former employees—appellants Chris Hill and Donald McKinney—asserting, among other causes of action, misappropriation of trade secrets and obtained a temporary injunction restraining their conduct pending trial. Hill and McKinney appeal.[1] In three issues, appellants contend that the district court abused its discretion in granting the temporary injunction because McLane failed to establish either (1) a cause of action under which it has a probable right of recovery, or that (2) no probable, imminent and irreparable harm would occur in the interim if the relief was not granted; and that (3) the temporary injunction is facially invalid because it fails to comply with rule of civil procedure 683. We will overrule these contentions and affirm the district court's order.

---

[1] *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(4) (West Supp. 2008).

## BACKGROUND

McLane is a wholesale grocery distributor that provides goods and services to customers that include various grocery and convenience-store vendors. Among these vendors are Circle K Stores, Inc. The relationship between McLane and Circle K is governed by a distribution agreement that, while made confidential by its terms, the parties acknowledge authorizes Circle K to perform audits to determine whether McLane is charging Circle K correctly. The underlying litigation arose after Circle K sent a letter to McLane giving notice that it intended to perform such an audit through an outside firm and requesting certain accounting information. McLane later ascertained that three of its former employees were to be involved in the audit—appellants Hill and McKinney, plus a third, Peter Leavitt—and that the compensation of each would be tied in whole or in part to the revenues they could generate for Circle K through the audit. Alleging that appellants had been or would be utilizing its trade secrets and other confidential information to its detriment, McLane sued appellants in district court, asserting causes of action for trade-secret misappropriation, conversion, breach of fiduciary duty, tortious interference with contract, and conspiracy.[2] McLane obtained a temporary restraining order and, following a subsequent evidentiary hearing, a temporary injunction restraining appellants from using or disclosing McLane trade secrets or other non-public information pending trial on the merits. This appeal ensued.

---

[2] McLane advises that it later joined Leavitt as a defendant, but the issues on appeal concern only Hill and McKinney.

## ANALYSIS

**Standard of review**

"The sole issue before the trial court in a temporary injunction hearing is whether the applicant may preserve the status quo of the litigation's subject matter pending a trial on the merits." *Mabrey v. Sandstream, Inc.*, 124 S.W.3d 302, 309 (Tex. App.—Fort Worth 2003, no pet.) (citing *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002)).  To obtain a temporary injunction, an applicant must plead and prove three elements:  (1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim.  *Butnaru*, 84 S.W.3d at 204; *Synergy Ctr., Ltd. v. Lone Star Franchising, Inc.*, 63 S.W.3d 561, 564 (Tex. App.—Austin 2001, no pet.).  "The applicant seeking a temporary injunction does not have to prove that it will ultimately prevail in the litigation."  *Center for Econ. Justice v. American Ins. Ass'n*, 39 S.W.3d 337, 343 (Tex. App.—Austin 2001, no pet.) (citing *Transport Co. v. Robertson Transps., Inc.*, 261 S.W.2d 549, 552 (Tex. 1953)).

Whether to grant or deny a temporary injunction is within the trial court's sound discretion.  *Butnaru*, 84 S.W.3d at 204.  We will not reverse the trial court's judgment unless the trial court's action was so arbitrary that it exceeded the bounds of reasonable discretion.  *Id.*  A trial court does not abuse its discretion when it bases its decision on conflicting evidence, as long as some evidence in the record reasonably supports the trial court's decision.  *Brammer v. KB Home Lone Star, L.P.*, 114 S.W.3d 101, 105-10 (Tex. App.—Austin 2003, no pet.).  We view the evidence in the light most favorable to the trial court's order, indulging every reasonable inference in its favor.  *Id.*  Where, as here, the trial court does not make findings of fact and conclusions of law, we will

3

uphold the court's order on any legal theory supported by the record. *EMSL Analytical, Inc. v. Younker*, 154 S.W.3d 693, 696 (Tex. App.—Houston [14th Dist.] 2004, no pet.).

**Probable right to relief**

Although McLane pled other causes of action, it acknowledges that the temporary injunction was based on its cause of action for misappropriation of trade secrets. In their first issue, appellants assert, in substance, that McLane failed to present any evidence of a probable right of relief based on a cause of action for trade-secret misappropriation.[3] The elements of trade-secret misappropriation are: (1) the existence of a trade secret owned by the plaintiff; (2) breach of a confidential relationship or improper discovery of a trade secret; (3) "use" of the trade secret; and (4) injury. *Trilogy Software, Inc. v. Callidus Software, Inc.*, 143 S.W.3d 452, 463 (Tex. App.—Austin 2004, pet. denied).

*Hill*

The district court heard evidence that Hill had the requisite confidential relationship with McLane that prohibited him from disclosing or using McLane trade secrets. Specifically, Hill had been employed by McLane between February 1993 until January 2009, when he resigned. *See Sands v. Estate of Buys*, 160 S.W.3d 684, 687 (Tex. App.—Fort Worth 2005, no pet.); *Rugen v. Interactive Bus. Sys.*, 864 S.W.2d 548, 551 (Tex. App.—Dallas 1993, no pet.) (stating that "it is well established that even without an enforceable contractual restriction, 'a former employee is

---

[3] Appellants do not appear to dispute that McLane has pled a cause of action for misappropriation of trade secrets.

precluded from using for his own advantage, and to the detriment of his former employer, confidential information or trade secrets acquired by or imparted to him in the course of his employment.'" (quoting *Johnson v. American Speedreading Acad., Inc.*, 526 S.W.2d 163, 166 (Tex. Civ. App.—Dallas 1975, no writ))). Furthermore, while employed at McLane, Hill signed a contract agreeing to abide by McLane's Code of Business Conduct and Ethics, which included a confidentiality agreement that restricted disclosure of "confidential McLane information," including "all non-public information that might be of interest to competitors or harmful to the Company, its customers, or teammates if disclosed" and "all non-public information that suppliers and customers have entrusted to the Company." This contractual duty was explicitly made applicable both during and after Hill's employment with McLane.

The district court also heard evidence that Hill acquired confidential and trade secret information owned by McLane through his work there. "A trade secret is any formula, pattern, device, or compilation of information which is used in one's business and presents an opportunity to obtain an advantage over competitors who do not know or use it." *Computer Assocs. Int'l v. Altai, Inc.*, 918 S.W.2d 453, 455 (Tex. 1996) (citing *Hyde Corp. v. Huffines*, 314 S.W.2d 763, 776 (Tex. 1958) (quoting Restatement of Torts § 757 (1939))); *see* Restatement (Third) of Unfair Competition § 39 (1995). To determine whether a trade secret exists, Texas courts weigh six nonexclusive factors:

(1)      the extent to which the information is known outside of the business;

(2)      the extent to which it is known by employees and others involved in the business;

5

(3)     the extent of the measures taken to guard the secrecy of the information;

(4)     the value of the information to the business and its competitors;

(5)     the amount of effort or money expended in developing the information; and

(6)     the ease or difficulty with which the information could be properly acquired or duplicated by others.

*In re Bass*, 113 S.W.3d 735, 739 (citing Restatement of Torts § 757 cmt. b (1939); Restatement (Third) of Unfair Competition § 39 reporter's n. cmt. d (1995)).  Because "trade secrets do not always neatly fit each of the factors," and because "other factors could also be relevant to trade secret analysis," courts should "weigh the factors in the context of the surrounding circumstances."  *Id.* at 740.  However, at the preliminary stage of deciding whether to grant a temporary injunction, a trial court does not determine whether or not a trade secret actually exists.  *Center for Econ. Justice*, 39 S.W.3d at 343.  Instead, "the trial court ascertains whether the applicant has established that the information is entitled to trade-secret protection until trial on the merits."  *Id.* (citing *T-N-T Motorsports, Inc. v. Hennessey Motorsports, Inc.*, 965 S.W.2d 18, 23 (Tex. App.—Houston [1st Dist.] 1998, no pet.)).  "[A]n order granting trade-secret protection does not mean the protected information is in fact a trade secret."  *Id.* (citing *Midland Bldg. & Loan Ass'n v. Sparks Chapel Colored M.E. Church*, 35 S.W.2d 773, 775 (Tex. Civ. App.—Dallas 1931, no writ)).

The district court did not abuse its discretion in finding that Hill acquired information for which McLane is entitled to trade-secret protection pending trial.  It heard evidence that Hill worked in accounting and eventually became the controller (basically, the head accountant) for three McLane divisions and, in that capacity, had wide access to internal and confidential McLane

financial, budgetary, and operations information, including information regarding customer pricing, invoicing, and taxation. The district court heard evidence that McLane protected its information by measures that included password-restricted access, confidentiality agreements with employees who would be exposed to the information (as Hill signed), and confidentiality clauses in its distribution agreements with customers (e.g., grocery and convenience store chains).

There was also evidence that Hill had possession of documents that either merit trade-secret protection or reflect trade secrets that Hill knew. Among those documents were an email between Hill and other McLane employees that contained a customer list and customer information and the confidential distribution agreement between Circle K and McLane. The district court heard testimony that Hill had copied to his computer McLane documents containing customer information, which he intended to use to determine whether customers would be a good fit to audit. It also heard testimony from McLane employee Kevin Koch that, in addition to having access to confidential documents and tax returns, Hill became privy to confidential information including customer lists, business contacts, vendor listings, information on how and when McLane made purchases, McLane's terms of payment, and billing strategies. Koch noted that Hill and McKinney were in a position to disclose data that could result in Circle K or other customers negotiating their prices downward, which could severely damage McLane because of the low margins in McLane's business.

McLane presented evidence that, prior to leaving McLane, Hill was in regular contact with McKinney regarding plans to get him to audit McLane for Circle K. There was also evidence suggesting that Leavitt, McKinney, and Hill may have been attempting to keep McLane unaware of Hill's involvement; Koch testified that Hill himself had denied having any knowledge of an attempt

7

by any former McLane employee when in fact Hill had already entered into a contract with Leavitt to help with the audit.

In sum, there was evidence that Hill had acquired confidential McLane information and was planning to audit McLane's contract with Circle K in order to benefit Circle K. Under these circumstances, the district court did not abuse its discretion in finding a probable right to relief for trade secret misappropriation with regard to Hill.

### *McKinney*

The district court also did not abuse its discretion in finding that McKinney acquired information for which McLane is entitled to trade-secret protection pending trial. McKinney testified that Hill contacted him in 2009 to discuss starting an auditing business, and McKinney knew that Hill would have confidential profit and loss information related to the divisions Hill controlled at McLane. McKinney also testified that prior to meeting with Circle K to discuss the McLane audit, he received a copy of the confidential distribution agreement between Circle K and McLane, which he shared with his fellow auditors. In addition to a copy of the distribution agreement, McKinney had received from Circle K a spreadsheet that, according to Kevin Koch's testimony, contained McLane's confidential information regarding rebates and pricing. Although McKinney may not have obtained McLane's confidential information directly from McLane, he nonetheless possessed McLane's confidential information either through Circle K or through Hill, neither of whom had permission to share that information.

The record supports findings that McKinney, like Hill, possessed confidential McLane information, and was planning to use that information to audit McLane for Circle K. Hill

8

and McKinney were hired by Leavitt to provide information in connection with the audit and, according to Hill, answer questions. Both Hill and McKinney's recovery was to be a percentage of the revenue generated by the audit. Any McLane trade secrets or confidential information that Hill or McKinney knew could be used in the audit or in Circle K's other negotiations with McLane. Under the circumstances, the district court could have found that it was probable that Hill and McKinney would use confidential information, including trade secrets, for their benefit and to McLane's detriment. *See Rugen*, 864 S.W.2d at 552. We therefore cannot conclude that the district court abused its discretion in finding a probable right to relief with regard to McKinney's misappropriation of trade secrets.

We overrule appellants' first issue.

**Probable, imminent, irreparable injury**

In their second issue, appellants contend that the district court abused its discretion in finding that McLane will be irreparably harmed by their participation in an audit of McLane. To the contrary, the district court heard evidence that Hill had intimate knowledge of McLane's accounting practices and access to customer and pricing information. McKinney also possessed confidential information belonging to McLane. The district court heard evidence that if Hill or McKinney disclosed this information to any of McLane's customers, the customers could use the information to negotiate down prices or otherwise to renegotiate their relationships with McLane to McLane's detriment. It is a reasonable inference that if Hill and McKinney were to impermissibly use McLane's trade secrets to perform an audit, the resulting damages would be difficult to calculate. Because the very purpose of the injunction is to prevent disclosure of trade secrets pending trial,

9

plaintiffs need not demonstrate prior to a trial on the merits that a trade secret has actually been misappropriated. Instead, "harm to the trade secret owner may be presumed when a defendant possesses trade secrets and is in a position to use them." *IAC, Ltd. v. Bell Helicopter Textron, Inc.*, 160 S.W.3d 191, 201 (Tex. App.—Fort Worth 2005, no pet.).

Even assuming the best of good faith from Hill and McKinney, Hill and McKinney might have difficulty preventing their knowledge of McLane's trade secrets from infiltrating their work. *See FMC Corp. v. Varco Int'l, Inc.*, 677 F.2d 500, 504 (5th Cir. 1982); *Weed Eater, Inc. v. Dowling*, 562 S.W.2d 898, 902 (Tex. Civ. App.—Houston [1st Dist.] 1978, writ ref'd n.r.e.). In *FMC Corporation*, the Fifth Circuit noted the difficulty of avoiding the use of trade secrets in performing similar work for a competitor of a former employer. The court reversed the federal district court and granted a temporary injunction against use of trade secrets where a manager with knowledge about a particular manufacturing process accepted employment with a competitor that was trying to discover the same manufacturing process. The former manager had knowledge of at least some trade secrets, and was performing work comparable to the work he had performed for his former employer. The court therefore concluded that "the fear of irreparable injury is realistic." *FMC Corp.*, 677 F.2d at 505. Similarly, in *Weed Eater*, the First Court of Appeals upheld and expanded the grant of a temporary injunction against use of trade secrets. An employee who had designed a method for manufacturing a string line trimmer accepted employment with a competitor who was also attempting to manufacture string line trimmers. The court held that although the trial court granted the injunction as to trade secrets, the "trial court abused its discretion by failing to include in the injunction order a provision restraining [the employee] from continuing in the

10

employment of [the competitor]" so long as his duties related to the manufacture and development of similar lawn trimmers. *Weed Eater*, 562 S.W.2d at 902. Hill and McKinney's position as independent contractors working for a customer, rather than a competitor, of McLane does not alter the conclusion that they should be enjoined from disclosing McLane's confidential information.

Indeed, here, where Hill and McKinney are planning to audit McLane, Hill and McKinney would be working together to perform the same kinds of accounting services that Hill performed for McLane, except that Hill would now be switching sides: rather than looking for ways to benefit McLane, Hill would be looking to use his knowledge to benefit Circle K, to McLane's detriment. Viewing the evidence in a light most favorable to the district court's judgment, we conclude that the district court did not abuse its discretion in determining that this threatened misappropriation would result in a probable, imminent, irreparable injury to McLane. We overrule appellants' second issue.

**Rule 683**

In their third issue, appellants assert that the temporary injunction is void because it fails to comply with rule of civil procedure 683. Rule 683 requires that "[e]very order granting an injunction shall set forth the reasons for its issuance; shall be specific in terms" and "shall describe in reasonable detail and not by reference to the complaint or other document, the act or acts sought to be restrained." Tex. R. Civ. P. 683. Appellants urge that the temporary injunction here does not set forth the reasons for its issuance with sufficient specificity, nor does it describe in "reasonable detail" the reasons for its issuance. We disagree.

11

Regarding rule 683's requirement that the order specifically state the reasons for issuance, the Texas Supreme Court has explained that "[i]t is not required that the trial court explain its reasons for believing that the applicant has shown a probable right to final relief, but it is necessary to give the reasons why injury will be suffered if the interlocutory relief is not ordered." *State v. Cook United, Inc.*, 464 S.W.2d 105, 106 (Tex. 1971) (citing *Transport Co. v. Robertson Transps.*, 261 S.W.2d 549 (1953)). The district court's order here satisfies these requirements. It clearly specifies that it is being issued to protect McLane's trade secrets, the disclosure of which would cause irreparable harm:

> the Court finds and concludes that Plaintiff will probably prevail on the trial of this cause, that CHRIS HILL and DONALD McKINNEY are in possession of information belonging to McLANE that is entitled to trade secret protection pending trial on the merits, and that CHRIS HILL and DONALD McKINNEY intend to, or it is probable that they will use or distribute such information before the Court can render judgment in this cause; that if they do use or distribute such information it will thereby alter the status quo and tend to make ineffectual a judgment in favor of McLANE, in that McLANE will suffer irreparable harm by the unauthorized use and disclosure of such information; that, unless CHRIS HILL and DONALD McKINNEY are deterred from using or disclosing such information, McLANE will be without adequate remedy at law in that McLANE cannot be adequately compensated in damages and that McLANE's information and rights involved herein are unique and irreplaceable.

The order further explains that Hill and McKinney possess information entitled to temporary trade-secret protection and are in a position where they will likely use or distribute the information. It adds that disclosure of the information would constitute irreparable harm because it cannot be adequately compensated in damages.

12

The order also describes in reasonable detail the acts sought to be restrained. The order enjoins Hill and McKinney from:

a. Using or disclosing to any person, business, or other entity directly or indirectly, any business information of McLANE;

b. Using or disclosing to any person, business, or other entity directly or indirectly, any confidential information and/or trade secrets of McLANE;

Hill and McKinney suggest that the order is overly broad in prohibiting them from using "business information," but the order defines "confidential information" and "business information" to include only non-public information and data compilations that could constitute trade secrets. The order does not prohibit either Hill or McKinney from using his general business knowledge to pursue work that would not entail revealing McLane's information.

We overrule appellants' third issue.

**CONCLUSION**

Having overruled each of appellants' issues, we affirm the district court's order granting McLane's application for a temporary injunction.

_____

Bob Pemberton, Justice

Before Chief Justice Jones, Justices Puryear and Pemberton

Affirmed

Filed: January 5, 2011